UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAY S. KRAVITZ,

                                        Plaintiff,

        v.                                                      9:17-cv-0600
                                                                (TJM/TWD)

KENNETH LEIS; JOHN/JANE DOE(S),

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

JAY S. KRAVITZ
Plaintiff, *pro se*
P.O. Box 206
Earlton, NY 12058

MURPHY BURNS, LLP                               THOMAS K. MURPHY, ESQ.
Attorneys for Defendant Kenneth Leis
407 Albany Shaker Road
Loundonville, NY 12211

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

This *pro se* civil rights action, brought under 42 U.S.C. § 1983, has been referred for a report and recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c). Plaintiff Jay S. Kravitz, a member and practitioner of the Jewish faith, commenced this action on June 1, 2017, asserting claims arising out of his confinement at the Greene County Jail ("GCJ") between March 2015, and June 2015.  (Dkt. No. 1.)  In the amended complaint, the operative pleading, Plaintiff alleges a First Amendment free exercise claim against Defendants John/Jane Doe(s) and a supervisory claim against Defendant Kenneth Leis.  (Dkt. No. 17.)

Defendant Leis now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 21.) Plaintiff has responded in opposition to the motion. (Dkt. No. 26.) For the following reasons, the Court recommends that Defendant Leis' motion for summary judgment (Dkt. No. 21) be granted and that Plaintiff's amended complaint (Dkt. No. 17) be dismissed in its entirety.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was incarcerated at the GCJ between February 26, 2015, and June 19, 2015. (Dkt. No. 21-5 at ¶ 1[1]; Dkt. No. 26 at ¶ 1.) In the amended complaint, Plaintiff alleges that within days of his arrival at that GCJ, his family brought personal prayer items to the jail including a skullcap (Yarmulke), prayer shawl (Tallit), and phylacteries (Tefillin). (Dkt. No. 17 at ¶¶ 10, 11.) Defendants John/Jane Doe(s) informed Plaintiff that he would be allowed to possess his Yarmulke but not his Tefillin. *Id*. at ¶ 11. Plaintiff would be permitted to wear his Tallit for twenty minutes each day during Passover. *Id*.

Plaintiff filed a complaint with an officer on duty, which was denied. *Id*. at ¶ 12. Plaintiff then filed a grievance and the Grievance Coordinator issued a decision recommending that Plaintiff should have access to his Tallit and Tefillin in his cell. *Id*. at ¶ 13. Defendant Leis, on behalf of Superintendent Michael J. Spitz, overturned the Grievance Coordinator's decision. *Id*. at ¶ 14.

By Decision and Order filed June 15, 2017, only Plaintiff's (1) First Amendment free exercise claims against Defendants John/Jane Doe(s); and (2) supervisory claim against Defendant Leis survived initial review. (Dkt. No. 16.) The Court further advised:

> Since service cannot be effected on a "Doe" defendant, if Plaintiff
> wishes to pursue the claims against this defendant, he must take

---

[1] Paragraph references are used where documents identified by CM/ECF docket number contain consecutively numbered paragraphs.

> reasonable steps through discovery to ascertain his/her identity.
> Upon learning the identity of this individual, Plaintiff must seek
> permission to amend his Amended Complaint to properly name
> him or her as a defendant herein.  If the Plaintiff fails to ascertain
> the identity of any Doe defendant so as to permit the timely service
> of process, this action will be dismissed as against that individual.

*Id*. at 6.[2]  Defendant Leis filed his answer to the amended complaint on January 2, 2018.  (Dkt.

No. 18.)

Defendant Leis moves for the entry of summary judgment (Dkt. No. 21) dismissing

Plaintiff's supervisory claim against him based upon (1) lack of personal involvement; (2);

qualified immunity; and (3) judicial estoppel.  (Dkt. No. 21-6 at 5-12.)  Plaintiff opposes the

motion.  (Dkt. No. 26.)  Defendant Leis filed a reply.  (Dkt. No. 28.)

## II.    APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together

"show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986);

Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of

showing, through the production of admissible evidence, no genuine issue of material fact exists.

*Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the

[record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Liberty Lobby*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at

272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the

---

[2]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (quotation marks omitted). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In *Jeffreys v. City of New York*, the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). "To defeat summary judgment, . . . nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Id.* 426 F.3d at 554 (citation and quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). "[T]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is

proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)[3] citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## III.   DISCUSSION

Construed liberally, Plaintiff claims Defendants violated his constitutional rights under the First Amendment's Free Exercise Clause in two ways. First, Plaintiff claims Defendants John/Jane Doe(s) did not allow Plaintiff to possess Tallit and Tefillin in his cell. (Dkt. No. 17 at ¶ 11.) Second, Plaintiff alleges Defendant Leis "overrode" the recommendation of the Grievance Coordinator that Plaintiff be allowed to possess Tallit and Tefillin in his cell, and that he did so at the behest of Superintendent Spitz. *Id*. at ¶¶ 13, 14.

### A.   First Amendment Free Exercise Claim against John/Jane Does

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However, the right "is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Johnson v. Guiffere*, No. 04-CV-57 (DNH/DEP), 2007 WL 3046703, at *4 (N.D.N.Y. Oct.17, 2007) (citing *O'Lone v. Estate of Shabbaz*, 482 U.S. 348 (1987)).

---

[3]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

To succeed on a claim under the Free Exercise Clause, the plaintiff must show at the threshold that the challenged conduct "substantially burdens his sincerely held religious beliefs." *Pugh v. Goord*, 571 F. Supp. 2d 477, 497 (S.D.N.Y. 2008) (quoting *Salahuddin*, 467 F.3d at 274-75) (citing *Ford*, 352 F.3d at 591). Although the Second Circuit has applied the "substantial burden" test in its most recent prison free exercise cases, it has done so while explicitly refusing to adopt or endorse the test. *See Williams v. Doe*, 639 F. App'x at 55, 56 (2d Cir. 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F. 3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendant's conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, courts in this District have continued to apply the substantial burden test. *See, e.g.*, *Wright v. Stallone*, No. 9:17-CV-0487 (LEK/TWD), 2018 WL 671256, at *9 (N.D.N.Y. Jan. 31, 2018) (applying substantial burden test); *Berisha v. Ferrell*, No. 9:13- CV-1191 (LEK/ATB), 2016 WL 1295178, at *3 (N.D.N.Y. Mar. 8, 2016) (same); *Skates v. Shusda*, 9:14-CV-1092 (TJM/DEP), 2016 WL 3882530, at *4 & n.6 (N.D.N.Y. May 31, 2016) (same).

Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

Here, despite the Court's explicit warning that failure to identify the Doe Defendants would result in dismissal of the action as against that individual, Plaintiff has not yet done so. (Dkt. No. 16 at 6.)  The Docket maintained by the Clerk's Office does not reflect the identification of, or service on, any of the Doe Defendants during the more than twenty-one months this action has been pending.  Therefore, the Court recommends dismissal of the First Amendment free exercise claims against the Doe Defendants without prejudice.[4]  *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 440 (N.D.N.Y. 2009) (dismissing without prejudice the plaintiff's claims against the defendants designated as Does for failure to timely serve and name those individuals); *Pravda v. City of Albany*, 178 F.R.D. 25, 26 (N.D.N.Y. 1998) (dismissing a plaintiff's claims against the Doe defendant after plaintiff had been given over two years to identify and serve those individuals, including the full discovery period"); *Reed v. Doe*, No. 11-CV-250 (TJM/DEP), 2015 WL 902795, at *5 (N.D.N.Y. Mar. 3, 2015) (dismissing the plaintiff's claim against a Doe defendant without prejudice after the plaintiff "failed to . . . take timely measures reasonably calculated to ascertain the John Doe's identity").

### B.    Supervisory Claim against Defendant Leis

Plaintiff brings a supervisory liability claim against Defendant Leis.  (Dkt. No. 17 at ¶¶ 13, 14.)  The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their

---

[4]  In so recommending, the Court expresses no opinion as to whether Plaintiff's First Amendment Free Exercise claim against the Doe Defendants would be time barred.

subordinates under a theory of *respondeat superior*.").  Thus, "[h]olding a position in a

hierarchical chain of command, without more, is insufficient to support a showing of personal

involvement."  *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at \*6

(N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also Wright v. Smith*, 21 F.3d

496, 501 (2d Cir. 1994) (noting that a defendant may not be held liable in a § 1983 action merely

because he or she held a high position of authority).

    The Second Circuit has held that personal involvement by a supervisor necessary to state

a claim under § 1983 may be found where:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference to the rights of inmates
> by failing to act on information indicating that unconstitutional
> acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[5]

    Here, Plaintiff claims unidentified individuals "denied him access to and possession of

his sacred ritual prayer objects[.]"  (Dkt. No. 17 at ¶¶ 11, 12.)  Plaintiff further alleges Defendant

Leis reversed the Grievance Coordinator's recommendation that Plaintiff be allowed to possess

Tallit and Tefillin in his cell.  *Id*. at ¶¶ 13, 14.  To be sure, district courts have found personal

involvement based on the denial of a grievance where the alleged constitutional violation

complained of in the grievance was "ongoing [ . . .] such that the 'supervisory official who

reviews the grievance can remedy [it] directly.'"  *Burton v. Lynch*, 664 F. Supp. 2d 349, 360

---

[5]  The Second Circuit has thus far expressly declined to determine whether *Iqbal* eliminated any
of the *Colon* bases for liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir.
2013).

(S.D.N.Y. 2009) (citation omitted).  This standard, however, presupposes a finding of underlying

unlawful conduct.  *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("[F]or a supervisor to

be liable under [§] 1983, there must have been an underlying constitutional deprivation."); *Alston*

*v. Bendheim*, 672 F. Supp. 2d 378, 388-89 (S.D.N.Y. 2009) ("A necessary factor . . . of . . .

supervisory liability is that a constitutional violation have occurred."); *Hayes v. Dahkle*, No.

9:16-CV-1368 (TJM/CFH), 2018 WL 555513, at *1 (N.D.N.Y. Jan. 19, 2018) ("absent a

subordinate's underlying constitutional violation, there can be no supervisory liability") (citing

*Hernandez v. Keane*, 341 F. 3d 137, 145 (2d Cir. 2003); (*Elek v. Inc. Vill. of Monroe*, 815 F.

Supp. 2d 801, 808 (S.D.N.Y. 2011)).

Here, inasmuch as the Court is recommending dismissal of the underlying Free Exercise

claim against the Doe Defendants, Plaintiff cannot sustain a supervisory liability claim against

Defendant Leis.  *Thompson v. Carlson*, No. 9:08-CV-487 (TJM/RFT), 2010 WL 843872, at *7

(N.D.N.Y. Mar. 10, 2010) (citing *Blyden*, 186 F.3d at 265 ("Of course, for a supervisor to be

liable under [§] 1983, there must have been an underlying constitutional deprivation.")).

Even if the Court were to assume solely for purposes of this motion that Plaintiff

demonstrated an underlying First Amendment constitutional violation, the evidence demonstrates

Defendant Leis is entitled to summary judgment on the supervisory claim for lack of personal

involvement.

Defendant Leis was employed by the Greene County Sheriff's Office from February

1991 until 2017.  (Dkt. No. 21-2 at ¶¶ 1, 2.)  From 2011 until his retirement, he held the rank of

Lieutenant and his duties and responsibilities included assisting Superintendent Spitz in running

the day-to-day operations of the GCJ.  *Id*. at ¶ 2.

At the GCJ, there is a formal Grievance Program, as required by County Jails, which allows a complaining inmate to file a formal written Grievance, which is then investigated by a Grievance Coordinator who makes a recommendation. *Id.* at ¶ 20. If the recommendation is not accepted by the inmate, the inmate can appeal the Grievance to the Chief Administrator Officer ("CAO"). *Id.* If the CAO renders a decision denying the grievance, the inmate may appeal the decision to the New York State Commission on Corrections Citizen's Policy and Complaint Review Council ("CPCRC"). *Id.* The CPCRC issues a written decision, which is sent to the inmate and the CAO. If the determination is in favor of the inmate, the GCJ will be directed to comply with the grievance and provide an appropriate remedy. *Id.*

In addition to the formal Grievance Program, there is an informal complaint process at the GCJ whereby an inmate can file a "Facility Complaint" that is reviewed and responded to at the housing unit level, possibly avoiding the necessity of filing a formal Grievance. *Id.* at ¶ 21.

In this case, Plaintiff's supervisory claim is premised entirely upon his allegation that Defendant Leis "overrode" the recommendation of the Grievance Coordinator that Plaintiff be allowed to possess Tallit and Tefillin in his cell, and that he did so at the behest of Superintendent Spitz. (Dkt. No. 17 at ¶¶ 13, 14.) Defendant Leis argues Plaintiff's claim simply does not withstand security and is belied by the record. (Dkt. No. 21-6 at 5-8.) The Court agrees with Defendant Leis.

On or about April 13, 2015, Plaintiff submitted a "Facility Complaint" regarding observance of Passover 2015 dated April 13, 2015, stating:

> In letters & conversations w/ Lt. Leis the answer I get for the two problems I will mention have been . . . not my call. The decisions have come from above.
>
> Issue (1) My prayer tefillin were not allowed at all not allowing me the ability to do morning prayers properly.

> (2)  My Tallit was held & given to me on some mornings &
> requested back immediately not allowing me time needed for
> morning prayer.
>
> You Supt Spit [sic] know better than most w/ DOCCS career that
> both prayer items are allowed in the possession of DOCCS inmate
> at all facilities.  I have also had them in other, all surrounding
> county Jails.
>
> What is your reasoning?

(Dkt. No. 21-3 at 18.)  By memorandum dated April 14, 2015, Defendant Leis acknowledged

receipt of the Facility Complaint and, in relevant part, responded:

> Before Passover began I spoke with Rabbi Zoe B. Zak and she
> assisted me in getting all the items necessary for your observance
> of Passover.  . . .
>
> The religious items that were needed were placed in a tote that was
> issued to you each morning and evening.  You refused these items
> on some of the days of Passover, but they were still offered.  . . .
>
> Your Facility Complaint has no merit.  Rabbi Zak reviewed all
> religious articles and menu's [sic] and advised the Jail that you had
> everything that was needed to observe Passover.

(Dkt. No. 21-3 at 19.)  Plaintiff responded, in relevant part:

> Your letter 4/14 speaks of Passover.  Your response addresses only
> the provisions for that holiday observance.  I clarify now my
> complaint.  Passover was perfect.  The Seder was outstanding.
> You did your due diligence.  I thank you again.  THE PROBLEM
> IS:
>
> (1)  Who made the decision to not allow the Tefillin in at all &
> WHY?
>
> (2)  Why was the Tallit held from my constant possession & who
> made the decision?
>
> **PLEASE EXPLAIN WHO & WHY** my daily prayer items were
> not in my constant possession.  Why was Tefillin rejected and
> Tallit controlled?

*Id*. at 20.  By memorandum dated April 20, 2015, Defendant Leis responded, in part, "Your

Facility Complaint has already been answered. . . .  This is the last time I will address this

issue."  *Id*. at 21.

The next day, Plaintiff filed a grievance, which was titled "Not Being Allowed to have

Religious Items."  *Id*. at 23.  Plaintiff described the grievance as follows:

> In end of March I submitted a letter to the commanding brass of
> GC Jail alerting them that I would like to have my personal daily
> prayer traditional standard articles brought in by my family.  Also I
> requested that the jail provide the essential provision to observe a
> major Jewish holiday of Passover.  I wrote down what was needed,
> the name & number of the local Rabbi.

*Id*.  He requested the following action: "I want in writing who & why the decision to violate my

First Amendment & the Jail rules occurred!"  *Id*.  On April 21, 2015, a facility staff member

responded: "It is beyond my control to allow such items to be given to I/M Kravitz, to keep in

cell."  *Id*.  Plaintiff indicated he did not accept the resolution and wished to file a formal

grievance.  *Id*.  Plaintiff's grievance was assigned Grievance No. 15-0007.  *Id*. at 23-24.  On

April 23, 2015, the Grievance Coordinator issued the following decision:

> As the Grievance Coordinator, I feel that I/M Kravitz should be
> allowed to receive and be allowed to keep such items the Tallit and
> Tefillin in his cell.  He is a practicing person of the Jewish faith.

*Id*. at 24.  Plaintiff acknowledged reading the Grievance Coordinator's decision and indicated he

wished to appeal to the CAO.  *Id*.  On May 20, 2015, the CAO, Superintendent Spitz, issued the

following decision:

> After speaking with a local Rabbi, I will allow you to have (1)
> Tallit & (1) Tefillin in your cell.  These items are for in cell use
> only.  These items will not be provided by the facility but you will
> be allowed to receive them from an outside source.

*Id.* On May 21, 2015, Plaintiff signed and dated the decision of the CAO and indicated he wished to appeal to the CPCRC. *Id.*

Here, it is undisputed that "Defendant Leis' duties and responsibilities at the GCJ did not include involvement in the Grievance Program." (Dkt. No. 21-5 at ¶17; Dkt. No. 26 at ¶ 17.) Defendant Leis declares in his affidavit:

> I was not part of the Grievance Program and I did not participate in any decision making with regard to [Plaintiff's] Grievances. I was only involved in providing the assistance necessary to be sure that [P]laintiff was able to observe the holidays of Passover and Shavuot while in GGJ. Further, as the Grievance documents filed earlier indicate, Plaintiff acknowledged that he received and read on May 21, Superintendent Spitz's determination allowing him the Tallit and Tefillin.

(Dkt. No. 21-2 at ¶ 34.) Indeed, Defendant Leis unequivocally states, "At no time during [P]laintiff's incarceration at the [GCJ] between February 26 and June 19, 2015, did I 'overrule,' 'reverse' or otherwise became involved in a Grievance filed by Plaintiff regarding his religious items." *Id.* at ¶ 35. Further, Defendant Leis was not aware of any efforts made by Plaintiff to have the items brought to the jail after Superintendent Spitz's May 20, 2015, decision, and prior to his release on June 19, 2015. *Id.* at ¶ 36.

Plaintiff has offered no evidence, admissible or otherwise, to rebut Defendant Leis' affidavit. (*See* Dkt. Nos. 26; 26-1; 26-2.) Instead, Plaintiff argues, in wholly conclusory and speculative fashion, that Defendant Leis "did participate in the investigation or determination of [P]laintiff's Grievance No. 15-0007." (Dkt. No. 26 at ¶ 18.) He also "maintains that [Defendant Leis] was involved in the determination of Grievance No. 15-0007." *Id.* at ¶ 19. However, assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact. *See e.g.*, *Brown v. Artus*, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).

Upon review, the Court finds the summary judgment record simply does not support Plaintiff's claim that Defendant Leis was personally involved in any decision whatsoever related to Plaintiff's First Amendment claims based on his right to possess and use Tallit and Tefillin, nor does the record support Plaintiff's allegation that Defendant Leis "overruled" the Grievance Coordinator's recommendation.

Further, the Court finds Plaintiff's reliance on Defendant Leis' general knowledge of his religious affiliation and/or Defendant Leis' conduct as it related to other areas of his religious observance, including holiday observances, is misplaced and insufficient to demonstrate personal involvement in the claims pending in this action. Indeed, in order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Regardless, it is undisputed that Defendant Leis researched the requirements for Passover on the New York State Department of Corrections and Community Supervision website, contacted a local Rabbi and consulted with her as to the requirements of Passover, which was to begin April 3, 2015, and end April 11, 2015, and personally shopped in three different stores to acquire items needed by Plaintiff for Passover that he was unable to obtain through the GCJ's food distributors. (Dkt. No. 21 at ¶¶ 20-22; Dkt. No. 26 at ¶¶ 20-22.) In response to a request from Plaintiff to have a quiet location in order to pray during Passover, Defendant Leis arranged for a change in Plaintiff's housing assignment to a location with the maximum amount of privacy. (Dkt. No. 21 at ¶ 23; Dkt. No. 26 at ¶ 23.) Defendant Leis issued a memorandum to staff detailing the instructions and requirements necessary to be followed for Plaintiff to observe Passover in the GCJ. (Dkt. No. 21 at ¶ 24; Dkt. No. 26 at ¶ 4.) Indeed, Plaintiff expressed his thanks to Defendant Leis by writing: "You have done well. I thank you. Your professionalism

and diligence to accomplish my Passover will not go unnoticed by High of High Power.  God bless you and Yours."  (Dkt. No. 21 at ¶ 25; Dkt. No. 26 at ¶ 25.)

On May 11, 2015, Plaintiff requested the assistance of Defendant Leis to obtain items necessary to observe Shavuot in accordance with his Jewish faith from May 23 through May 25, 2015.  (Dkt. No. 21 at ¶ 26; Dkt. No. 26 at ¶ 26.)  On May 20, 2015, Plaintiff sent a note to Defendant Leis thanking him for the provisions he obtained enabling Plaintiff to observe Shavuot while incarcerated at the GCJ.  (Dkt. No. 21 at ¶ 27; Dkt. No. 26 at ¶ 23.)

Based on the foregoing, the Court recommends that Defendant Leis' motion for summary judgment be granted for lack of personal involvement.[6]

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's First Amendment Free Exercise claim against Defendants John/Jane Doe(s) be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that Defendant Leis' motion for summary judgment (Dkt. No. 21) be **GRANTED** for lack of personal involvement; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the

---

[6]  Inasmuch as the Court recommends granting summary judgment to Defendant Leis for lack of personal involvement, the Court declines to address Defendant Leis' alternative grounds for summary judgment.  (*See* Dkt. No. 21-6 at 8-12.)

[7]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a

Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: February 11, 2019
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,

v.

Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone,
New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York,
New York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

 *1  The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary
judgment and dismissing the amended complaint, and
United States Magistrate Judge James C. Francis IV
having issued a report and recommendation, dated
August 20, 1999, recommending that the motion
be granted, and upon review of that report and
recommendation together with plaintiff's letter to this
Court, dated August 28, 1999, stating that plaintiff does
"not contest the dismissal of this action", it is

ORDERED that the attached report and
recommendation of United States Magistrate Judge
James C. Francis IV, dated August 20, 1999, is adopted in
its entirety; and it is further

ORDERED that defendant Pflueger's motion for
summary judgment is granted, and the amended
complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter
judgment accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42
U.S.C. § 1983. Mr. Cole alleges that the defendant
Richard Pflueger, a corrections officer, violated his First
Amendment rights by refusing to allow him to attend
religious services. The defendant now moves for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set forth below, I recommend
that the defendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an
inmate in the custody the New York State Department
of Correctional Services ("DOCS"), incarcerated at the
Green Haven Correctional Facility. (First Amended
Complaint ("Am.Compl.") ¶ 3). From June 21, 1993 to
July 15, 1993, the plaintiff was in keeplock because of
an altercation with prison guards. (Am.Compl.¶¶ 17–
25). An inmate in keeplock is confined to his cell for
twenty-three hours a day with one hour for recreation.
(Affidavit of Anthony Annucci dated Dec. 1, 1994 ¶
5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶
3). Permission is granted unless prison officials determine
that the inmate's presence at the service would create
a threat to the safety of employees or other inmates.
(Schneider Aff. ¶ 3). The standard procedure at Green
Haven is for the captain's office to review all requests
by inmates in keeplock to attend religious services.
(Schneider Aff. ¶ 3). Written approval is provided to the
inmate if authorization is granted. (Affidavit of Richard
Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The
inmate must then present the appropriate form to the

gate officer before being released to attend the services. (Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"), attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *3 (S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se'* s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

### B. *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent inmates posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

1    In light of this finding, there is no need to consider the defendant's qualified immunity argument.

### *Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall

Cole v. Artuz, Not Reported in F.Supp.2d (1999)
Case 9:17-cv-00600-TJM-TWD    Document 29    Filed 02/11/19    Page 20 of 77
1999 WL 983876

have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 3046703
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

John Earl JOHNSON, Plaintiff,
v.
Joseph GUIFFERE [1] and John
Pecora, Administrator, Defendants.

[1]     Defendant Joseph A. Guiffere, who is alleged
to have been a corrections sergeant at the
Montgomery County Jail during the times relevant
to plaintiff's claims, was mistakenly named by the
plaintiff in his complaint as Sergeant Guiffery. In
my earlier report and recommendation, dated May
17, 2005, I directed the clerk to revise his records to
reflect that defendant's name as Sergeant Guiffrie.
*See* Dkt. No. 48. Because it now appears that the
proper spelling of this defendant's name is Guiffere,
I will once again ask the clerk's office to adjust its
records accordingly.

No. 9:04-CV-57.
|
Oct. 17, 2007.

**Attorneys and Law Firms**

John Earl Johnson, Albany, NY, pro se.

Donohue Sabo, Fred Hutchison, Esq., Kenneth G.
Varely, Esq., of Counsel, Albany, NY, for Defendant
Guiffere.

### ORDER

DAVID N. HURD, United States District Judge.

**\*1** Plaintiff, John Earl Johnson, brought this civil
rights action pursuant to 42 U.S.C. § 1983. In a Report
Recommendation dated August 10, 2007, the Honorable
David E. Peebles, United States Magistrate Judge,
recommended that the defendant Sergeant Guiffere's
motion for summary judgment be granted and the
plaintiff's complaint be dismissed in all respects, with
prejudice regarding defendant Guiffere, but without

prejudice as to defendant Pecora. Objections to the Report
Recommendation have been filed by the plaintiff.

Based upon a de novo review of the portions of
the Report-Recommendation to which the plaintiff has
objected, the Report-Recommendation is accepted and
adopted. *See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. The defendant Sergeant Guiffere's motion for summary
judgment is GRANTED;

2. The complaint is DISMISSED in all respects, with
prejudice with regard to defendant Guiffere;

3. The complaint is DISMISSED in all respects, without
prejudice as to defendant Pecora; and

4. The Clerk shall file judgment accordingly.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

DAVID E. PEEBLES, U.S. Magistrate Judge.

Plaintiff John Earl Johnson, who is now a federal prison
inmate, has commenced this action pursuant to 42 U.S.C.
§ 1983 alleging violation of his constitutional rights during
a one and one-half month period while confined as a
federal detainee within the Montgomery County Jail
("MCJ"). Johnson, a practicing Muslim, claims that jail
officials at the MCJ violated his constitutional rights by
depriving him of a diet consistent with his religious beliefs.

Currently pending before the court is a motion
by Sergeant Guiffere, the lone remaining defendant
appearing in the action, seeking the entry of summary
judgment dismissing plaintiff's claims against him.
Defendant's motion is predicated upon his assertion that
the policy in place at the MCJ, requiring only that Islamic
inmates be provided a "no pork" diet but that requests
for vegetarian or other religious alternative meals be
denied, is constitutional under existing law. Defendant
Guiffere further contends that if a constitutional violation

occurred, he is nonetheless entitled to qualified immunity from suit based upon the legal uncertainties surrounding plaintiff's claims. For the reasons set forth below, I recommend that Guiffere's summary judgment motion be granted and that plaintiff's claims against him be dismissed on the basis of qualified immunity.

## I. BACKGROUND

At the times relevant to his complaint the plaintiff, who subscribes to strict Islamic religious tenets, was a federal detainee held in the custody of the United States Marshals Service, and incarcerated within the MCJ pursuant to an apparent arrangement between that agency and officials operating the facility for the housing of federal prisoners awaiting trial and/or sentencing. Complaint (Dkt. No. 1) ¶ 3, Facts ¶¶ 1, 20; see also Defendant's Motion for Summary Judgment (Dkt. No. 62) Exh. B, at 37. On June 13, 2003, following his transfer into the MCJ, plaintiff informed jail officials that his religion required he be fed meals consistent with his Islamic beliefs, though without providing elaboration regarding the diet being requested. [2] Complaint (Dkt. No. 1), Facts ¶¶ 1, 2; Johnson Aff. (Dkt. No. 30) ¶ 1. After an ensuing series of discussions with various prison officials at the MCJ regarding the issue, plaintiff formalized his dietary request on June 16, 2003 through the submission of a special diet request form asking that he not be served any meats "such as beef, chicken, turkey etc." because of his religious affiliation. Johnson Aff. (Dkt. No. 30) ¶¶ 1-2; Complaint (Dkt. No. 1), Facts ¶¶ 2-9; see also Guiffere Aff. (Dkt. No. 33-4) Exh. B. That request was denied on June 18, 2003 by defendant Guiffere, who responded that the MCJ is a "no pork facility" which does "not honor vegetarian diets." Guiffere Aff. (Dkt. No. 33-4) Exh. B; Complaint (Dkt. No. 1), Facts ¶ 12.

[2]    Plaintiff apparently adheres to a strict Islamic diet, which has been described by one court as follows:

> [p]racticing Muslims eat food that is Halal, which means allowed or lawful. The opposite of Halal is Haram, which means prohibited or unlawful. A Halal diet includes fruits, vegetables and all things from the sea. The flesh of herbivorous animals, such as cows, lambs, chickens and turkeys, is Halal if it is slaughtered with the appropriate prayer and in the appropriate manner.... Haram items include pork and all pork by-products, carrion and the flesh of carnivorous animals, such as cat, dog, rat,

lion, tiger, and eagle.... Halal does not require separate preparation and serving facilities after Halal meat is slaughtered according to ritual.

Abdul-Malik v. Goord, No. 96 CIV. 1021, 1997 WL 83402, at *1 (S.D.N.Y. Feb. 27, 1997); see also Smith v. Nuttal, No. 04-CV-0200, 2007 WL 837111, at *1 n. 3 (W.D.N.Y. Mar. 14, 2007). During his deposition, plaintiff explained the four mandatory characteristics of properly prepared Halal food at length by quoting a translation of the relevant sections of the Koran (Quran). See Defendant's Motion for Summary Judgment (Dkt. No. 62) Exh. B, at 18-22.

**\*2** Plaintiff filed a formal grievance regarding the denial of his special dietary request on June 18, 2003. Complaint (Dkt. No. 1), Facts ¶ 13; Johnson Aff. (Dkt. No. 30) ¶ 3. That grievance was denied by the facility's grievance coordinator, Candus M. Kwiatkowski, on June 25, 2003, based upon her finding that the facility's policy of reasonably accommodating prisoners' religious dietary beliefs had been followed. Complaint (Dkt. No. 1), Facts ¶ 14; Johnson Aff. (Dkt. No. 30) ¶ 5. That grievance denial was later upheld on appeal to John F. Pecora, the facility's chief administrative officer, on June 27, 2003. Complaint (Dkt. No. 1), Facts ¶ 19; Johnson Aff. (Dkt. No. 30) ¶ 7.

Plaintiff appealed the matter further to the Citizens' Policy and Complaint Review Council (the "CPCR Council") on or about June 27, 2003. Complaint (Dkt. No. 1), Facts ¶ 19; Johnson Aff. (Dkt. No. 30) ¶ 8. While plaintiff, who was transferred out of the MCJ on July 29, 2003, see Complaint (Dkt. No. 1), Facts ¶ 20, maintains that he never received a response with respect to that appeal, defendants assert that the CPCR Council voted on November 19, 2003 to deny the grievance, and notified both the Montgomery County Sheriff and the plaintiff of that determination by letter dated November 25, 2003 from Daniel B. Reardon, Commissioner and Chair of the New York Commission of Correction. Guiffere Aff. (Dkt. No. 33) ¶ 10.

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on January 16, 2004. Complaint (Dkt. No. 1). In his complaint, plaintiff named as defendants the CPCR Council as an entity, as well as John F. Pecora, the Administrator of the MCJ, and Sergeant Guiffere, a corrections employee at the facility. [3] Id. Plaintiff's complaint asserts various constitutional claims stemming from the denial of his dietary request,

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    2

including interference with the free exercise of his religious beliefs, procedural and substantive due process violations, and the denial of equal protection, and seeks recovery of compensatory and punitive damages. *Id.*

3    Defendant Pecora has neither been served, nor has he appeared in the action. *See* Dkt. Nos. 13, 16, 22. In light of plaintiff's failure to serve him within the allotted 120 days under Rule 4(m) of the Federal Rules of Civil Procedure, and in the absence of anything which would constitute good cause to extend that period, plaintiff's claims against defendant Pecora are subject to dismissal, without prejudice. Fed.R.Civ.P. 4(m); *see Shuster v. Nassau County,* No. 96 Civ. 3635, 1999 WL 9847, at \*1 (S.D.N.Y. Jan. 11, 1999) (Rule 4(m) authorizes dismissal where no service within 120 days after filing of the complaint); *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.Supp. 1279, 1282 (S.D.N.Y.1989) (citing *Mississippi Publ'g Corp. v. Murphree,* 326 U.S. 438, 444-45, 66 S.Ct. 242, 245-46 (1946)) (court lacks jurisdiction until defendants properly served with summons and complaint).

On July 15, 2004, in lieu of answering, the CPCR Council moved seeking dismissal of plaintiff's claims against it for failure to state a cause of action upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. Nos. 10, 11. In a report dated May 17, 2005, I recommended that all claims against the CPCR Council as an entity be dismissed as barred by absolute immunity under the Eleventh Amendment, with leave for plaintiff to replead to assert claims against individual members of the council, and further urged the court to deny plaintiff's cross-motion for summary judgment on the merits of his claims.[4] Dkt. No. 48. Those recommendations were adopted by order issued by U.S. District Judge David N. Hurd on December 7, 2005. Dkt. No. 51.

4    Plaintiff has not availed himself of this limited opportunity to replead.

On October 31, 2006 defendant Guiffere, the only other defendant served in the action, filed a summary judgment motion with the court, arguing both that the denial of plaintiff's dietary request did not violate a constitutional right because it was reasonably related to a legitimate penological interest, and that in any event he is protected from suit under the doctrine of qualified immunity. Dkt. No. 62. Plaintiff responded in opposition to Guiffere's

motion by submission filed on January 22, 2007, Dkt. No. 67, and defendant Guiffere has since countered with the filing on February 1, 2007 of a reply memorandum in response to plaintiff's opposition. Dkt. No. 69. Defendant Guiffere's summary judgment motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) (B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

**\*3** Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (citations omitted); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4, 106 S.Ct. at 2511 n. 4; *Security*

*Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

**B.** *First Amendment Free Exercise Claim* [5]

[5]    Although his complaint does not contain such a cause of action, plaintiff's factual allegations could support a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), which provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution .... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of a burden on that person-1) is in furtherance of a compelling governmental interest; and 2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Because the principles which inform analysis of plaintiff's free exercise claim are similar to those applicable to his potential RLUIPA cause of action, although the two claims are analyzed under somewhat different frameworks, *see Salahuddin v. Goord,* 467 F.3d 263, 274 (2d Cir.2006), and my finding of defendant's entitlement to qualified immunity applies equally to this potential claim, it is unnecessary to separately determine whether plaintiff's *pro se* complaint should be liberally construed as asserting such a cause of action.

**\*4** In his summary judgment motion, Guiffere initially argues that plaintiff's First Amendment rights were not abridged while being held in the MCJ, since New York

State guidelines for religious dietary needs and the facility's local practices, providing that a "pork-free" meal satisfies the constitutional dietary requirements for Muslim inmates, are reasonably related to legitimate penological interests. Defendant's Motion for Summary Judgment (Dkt. No. 26-6) at 2. Plaintiff counters that the budgetary concerns implicitly advanced by the defendant in defense of the relevant dietary practices at the MCJ do not support their position, since all that he asked was that his meals consist only of fish and vegetables, not that prison officials incur the expense of preparing Halal meals.

The First Amendment to the United States Constitution guarantees the right to the free exercise of religion. [6] *Cutter v. Wilkinson,* 544 U.S. 709, 719, 125 S.Ct. 2113, 2020 (2005). That clause, as is true with regard to the First Amendment generally, applies to prison inmates, subject to appropriate limiting factors. *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) ( "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974)). Thus, for example, under accepted free exercise jurisprudence inmates are guaranteed the right to participate in congregate religious services under most circumstances. *See, e.g., Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993) (citing cases).

[6]    That amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

The right of prison inmates to exercise their religious beliefs, however, is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404 (1987); *Salahuddin,* 993 F.2d at 308. A determination of whether the refusal to permit attendance at a religious service, for example, hinges upon the balancing of an inmate's First Amendment free exercise right, against institutional needs of officials tasked with the increasingly daunting task of operating prison facilities; that determination is "one of reasonableness, taking into account whether the particular [act] affecting [the] constitutional right ... is 'reasonably related to legitimate penological interests.' " *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.) (quoting *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987)), *cert. denied,* 498 U.S. 951, 111 S.Ct. 372 (1990).

Undeniably, the reach of the First Amendment's free exercise clause extends beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet and participation in religious meals. *McEachin v. McGuinnis,* 357 F.3d 197, 204-05 (2d Cir.2004); *Ford,* 352 F.3d at 597. Ordinarily the Eighth Amendment establishes as a constitutional minimum the requirement that inmates be provided with nutritionally adequate meals; provided this threshold is met, prison officials retain considerable discretion in determining dietary constituents. *Word v. Croce,* 169 F.Supp.2d 219, 226 (S.D.N.Y.2001). This requirement, however, is augmented by the First Amendment's free exercise clause, which is broad enough to include an inmate's "clearly established" right "to a diet consistent with his or her religious scruples." *Ford,* 352 F.3d at 597; *see also Bass v. Coughlin,* 976 F.2d 98, 99 (2d Cir.1992). "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." *McEachin,* 357 F.3d at 203. A free exercise claim arising from such a denial brings into focus the tension between the right of prison inmates to freely enjoy and exercise their religious beliefs on the one hand, and the necessity of prison officials to further legitimate penological interests on the other hand. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990).

**\*5** Examination of plaintiff's free exercise claim entails application of a three-part, burden shifting framework. *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir.1988). A party asserting a free exercise claim bears the initial burden of establishing that the disputed conduct infringes on his or her sincerely held religious beliefs.[7] *Salahuddin v. Goord,* 467 F.3d 263, 274-75 (2d Cir.2006); *King v. Bennett,* No. 02-CV-349, 2007 WL 1017102, at \*4 (W.D.N.Y. Mar. 30, 2007). Importantly, in evaluating this factor the court must be wary of " 'question[ing] the centrality of particular beliefs or practices to a faith, or a validity of particular litigants' interpretations of those creeds [,]' " *McEachin,* 357 F.3d at 201 (quoting *Hernandez v. Comm'r of Internal Revenue,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148-49 (1989)), and instead may only consider whether the particular plaintiff holds a belief which is religious in nature. *Ford,* 352 F.3d at 590; *King,* 2007 WL 1017102, at \*4. Once a plaintiff has made this showing, the burden then shifts to the defendant to identify a legitimate penological purpose

justifying the decision under scrutiny.[8] *Salahuddin,* 467 F.3d at 274-75; *Livingston v. Griffen,* No. 04-CV-00607, 2007 WL 1500382, at \*15 (W.D.N.Y. May 21, 2007). In the event such a penological interest is articulated, its reasonableness is then subject to analysis under the test set out by the Supreme Court in *Turner v. Safley,* 482 U .S. 78, 107 S.Ct. 2254 (1987). *Giano v. Senkowski,* 54 F.3d 1050, 1054 (2d Cir.1995); *Livingston,* 2007 WL 1500382, at \*15.

7    Noting in its decision in *Ford v. McGinnis* a circuit split over whether prisoners must demonstrate that a burden on their religious exercise is substantial in order to establish a free exercise claim, the Second Circuit declined to resolve the issue, instead assuming continued applicability of the substantial burden test. 352 F.3d 582, 592-93 (2d Cir.2003). Recent cases from this and other courts suggest that the Second Circuit resolved this split in its decision in *Salahuddin v. Goord,* 467 F.3d 263 (2d Cir.2006) by subscribing to the substantial burden test. *See, e.g., Livingston v. Griffin,* No. 04-CV-00607, 2007 WL 1500382, at \*15 (N .D.N.Y. May 21, 2007) (Singleton, J.); *King v. Bennett,* No. 02-CV-349, 2007 WL 1017102, at \*4 (W.D.N.Y. Mar. 30, 2007). While harboring some doubt that the Second Circuit has in fact laid the matter to rest, I find it unnecessary to take a stance regarding this issue.

8    While this framework is particularly well-suited for analysis of an agency wide or facility policy or practice affecting inmates generally, it applies with equal force to individual decisions such as that involved in this case, which impacts only a single inmate. *Salahuddin,* 467 F.3d at 274, n. 4.

Under *Turner,* the court must determine "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and [whether] the regulations are rationally related to that objective." *Thornburgh v. Abbott,* 490 U.S. 401, 414, 109 S.Ct. 1874, 1882 (1989). The court then asks whether the inmate is afforded adequate alternative means for exercising the right in question. *Id.* at 417, 109 S.Ct. at 1884. Lastly, the court must examine "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison." *Id.* at 418, 109 S.Ct. 1884. Decisions rendered since *Turner* have clarified that when applying this test, a court should examine "the existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests." *Smith v. Nuttal,* No. 04-CV-0200, 2007 WL837111, at \*5

(W.D.N.Y. Mar. 14, 2007) (citing *Salahuddin,* 467 F.3d at 274).

In his motion, defendant does not question the sincerity of plaintiff's Islamic religious beliefs. Plaintiff maintains that by providing him with meals containing meat other than pork, defendants have interfered with free exercise of his religion, the beliefs associated with which require him to observe a vegetarian diet-with the exception of fish, which he is permitted to eat. While plaintiff offers nothing, aside from his naked assertions in this regard, as evidence that his sincerely held religious beliefs require such a dietary accommodation, the Second Circuit has encouraged "courts [to] resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith." [9] *McEachin,* 357 F.3d at 201. Accordingly, the plaintiff has satisfied his burden at step one of the inquiry.

[9]　The Second Circuit had occasion to address this element-the bonafides of a plaintiff's sincerely held religious beliefs-in the context of a religious dietary restriction request made by an inmate in *Ford v. McGinnis,* 352 F.3d 582 (2d Cir.2003). While noting the difficulties inherent in casting upon the judiciary the task of probing the extent of a plaintiff's legitimately held beliefs, the court observed that "[a]n individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are 'sincerely held' and in the individual's 'own scheme of things, religious.' " *Id.* at 588 (citations omitted).

**\*6** It would ordinarily be incumbent at this juncture for the defendant to articulate palpably legitimate penological concerns to justify his refusal to provide the plaintiff with a vegetarian-plus-fish diet. Typically, defendants in similar cases offer up the financial burden associated with affording inmates particular diets, including those involving preparation and serving of Halal meals. *See, e.g., Williams v. Morton,* 343 F.3d 212, 217-18 (3d Cir.2003); *Abdul-Malik v. Goord,* No. 96 CIV. 1021, 1997 WL 83402, at \*4 (S.D.N.Y. Feb. 27, 1997). With the articulation of such a justification, the focus would then return to the plaintiff, under the governing test, to establish that the policy is not reasonably related to legitimate penological interests. *Ford,* 352 F.3d at 595-96. Such an inquiry is particularly fact-laden, and generally ill-suited for resolution on motion for summary judgment. *See generally Marria v. Broaddus,* 200 F.Supp.2d 280, 297 (S.D.N.Y.2002) (holding that fact issues existed

as to whether DOCS' ban on literature and assembly of religious group was reasonably related to legitimate penological interests); *Show v. Patterson,* 955 F.Supp. 182, 190-91 (S.D.N.Y.1997) (finding fact issues precluding summary judgment regarding whether strip search of Muslim inmates was reasonably related to legitimate penological interests).

In this instance the defendant has not offered any justification for his refusal to provide the plaintiff with the requested, vegetarian-plus-fish diet, the reasonableness of which could then be examined under *Turner,* instead arguing only his belief that plaintiff's non-pork diet should satisfy the requirements of mainstream Islamic religious tenets. Since this represents little more than an invitation for the court to examine the bonafides of plaintiff's religious beliefs-an invitation which, the Second Circuit has counseled, should be firmly resisted-I find defendant's failure to offer justification for his denial of plaintiff's dieting request to be fatal to his motion, and that accordingly he is not entitled to summary judgment in connection with the merits of plaintiff's First Amendment free exercise claim.

### C. *Equal Protection*

In addition to raising concerns under the free exercise clause of the First Amendment, plaintiff's complaint asserts a cause of action under the equal protection clause of the Fourteenth Amendment. The essence of that claim, however, is not well-defined in plaintiff's complaint, and his response in opposition to defendant's summary judgment motion fails to illuminate the claim.

The equal protection clause directs state actors to treat similarly situated people alike. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985). To prove a violation of the equal protection clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *See Giano,* 54 F.3d at 1057 (citing, *inter alia, McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 1767 (1987)). The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005) (quoting *Shaw v. Murphy,* 532 U.S.

223, 225, 121 S.Ct. 1475, 1477 (2001)) (internal quotation marks omitted).

**\*7** It may be that plaintiff asserts an equal protection violation stemming from the failure of prison officials to provide him with a diet consistent with his religious beliefs, while members of other religions are accommodated. In such a case plaintiff's equal protection claim is properly analyzed under the framework articulated by the Supreme Court in *Turner. Smith,* 2007 WL 837111, at \*5.

As is the case with regard to plaintiff's First Amendment claim, defendant has offered little of value to assist in determining whether it can be said, as a matter of law, that plaintiff's dietary request could not be accommodated consistent with legitimate penological concerns, and that the disparate treatment afforded to plaintiff, based upon his religious beliefs, thus did not abridge his rights to equal protection under the Fourteenth Amendment. Accordingly, defendant Guiffere is not entitled to summary judgment at this juncture with regard to the merits of plaintiff's equal protection claim.

D. *Procedural Due Process* [10]

[10]   Plaintiff's complaint also alleges deprivation of substantive due process. Because plaintiff's complaint adequately alleges a violation of the First Amendment free exercise clause and the denial of equal protection as guaranteed by the Fourteenth Amendment, there is no need to resort to the more generic substantive due process provision for an analysis of those claims. *See Velez v. Levy,* 401 F.3d 75, 94 (2d Cir.2005) ("[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process."). In any event, it cannot be said that plaintiff's allegations arise to a level sufficient to offend notions of substantive due process. *See id.* (noting alternatively that plaintiff's substantive due process claim must fail because alleged actions of defendants were not sufficiently shocking to create substantive due process violation).

In his complaint plaintiff also asserts a claim for deprivation of his procedural due process rights. Plaintiff's procedural due process claim contains two elements.

The first component of that claim derives from plaintiff's contention that in denying his request for a vegetarian-plus-fish diet, prison officials at the MCJ failed to follow their own internal regulations. This element of plaintiff's due process claim is easily discounted. It is well-established that no due process claims arise from the failure of prison officials to follow internal prison regulations. *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citing *Hyman v. Holder,* No. 96 Civ. 7748, 2001 WL 262665, at \*6 (S.D.N.Y. Mar. 15, 2001)).

The second portion of plaintiff's due process claim stems from the failure of prison officials to provide a hearing before denying his request for a religious meal. To successfully state a claim under 42 U.S.C. § 1983 for denial of due process, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient procedural safeguards. *See Tellier v. Fields,* 260 F.3d 69, 79-80 (2d Cir.2000) (citations omitted); *Hynes v. Squillance,* 143 F.3d 653, 658 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir.1996).

In his papers plaintiff has cited no provision under which New York has created a liberty interest guarantying prisoners meals including only vegetables and fish, as requested by him. Consequently, in order to prevail on his due process claim plaintiff must establish that the denial of his request in that regard imposed upon him "atypical and significant hardship" in relation to the ordinary incidents of prison life. *Sandin v. Conner,* 515 U.S. 472, 483-84, 115 S.Ct. 2293, 2300 (1995); *see also McEachin,* 357 F.3d at 202-03; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658. Because plaintiff's complaint, even when most generously construed, fails to contain any such allegation, his procedural due process claim is subject to dismissal as a matter of law.

E. *Qualified Immunity*
**\*8** In addition to seeking dismissal of plaintiff's claims on the merits, defendant now presses qualified immunity as an alternative basis for dismissal of plaintiff's claims against him.

Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)

(citations omitted). Accordingly, governmental officials sued for damages "are entitled to qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999) (citing *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996)); *see also Zellner v. Summerlin,* 494 F.3d 344, 2007 WL 2067932, at *20-21 (2d Cir. July 20, 2007); *Iqbal v. Hasty,* 490 F.3d 143 (2d Cir.2007). The law of qualified immunity seeks to strike a balance between overexposure by government officials to suits for violations based upon abstract rights and an unduly narrow view which would insulate them from liability in connection with virtually all discretionary decisions. *Locurto v. Safir,* 264 F.3d 154, 162-63 (2d Cir.2001); *Warren,* 196 F.3d at 332. As the Second Circuit has observed,

> [q]ualified immunity serves important interests in our political system, chief among them to ensure that damages suits do not unduly inhibit officials in the discharge of their duties by saddling individual officers with personal monetary liability and harassing litigation.

*Provost v. City of Newburgh,* 262 F.3d 146, 160 (2d Cir.2001) (internal quotations omitted) (citing, *inter alia, Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 456 F.2d 1339, 1348 (2d Cir.1972)).

Analysis of a claim of qualified immunity entails a three step inquiry. *Harhay v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211 (2d Cir.2003). As a threshold matter, it must first be determined whether, based upon the facts alleged, plaintiff has facially established a constitutional violation. *Id.* If the answer to this inquiry is in the affirmative, the court must then turn its focus to whether the right in issue was clearly established at the time of the alleged violation. *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201-02, 121 S.Ct. 2151, 2156 (2001)); *see also Poe v. Leonard,* 282 F.3d 123, 132-33 (2d Cir.2002). Finally, if the plaintiff had a clearly established, constitutionally protected right that was violated, he or she must demonstrate that it was not objectively reasonable for the defendant to believe that his action did not violate such law. *Harhay,* 323 F.3d at 211;

*Poe,* 282 F.3d at 133 (quoting *Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir.1998) (quoting, in turn, *Salim,* 93 F.3d at 89)).

**\*9** The first two elements, as they apply to the facts of this case, are not controversial. Addressing the merits of the plaintiff's free exercise and equal protection claims, I have found at least the existence of genuinely disputed material facts precluding a finding, as a matter of law, that no substantive violation occurred. Moreover, the right at stake, including of a prison inmate to receive meals consonant with their religious beliefs, subject only to the constraints of legitimate penological concerns, was clearly established at the times in dispute. *See, e.g., Ford,* 352 F.3d at 507; *Bass,* 976 F.2d at 99; *Kahane v. Carlson,* 527 F.2d 492, 495 (2d Cir.1975).

It is the third element, addressing on Sergeant Guiffere's state of mind, that is the focus of his application for immunity from suit. In this instance, Sergeant Guiffere asserts-and plaintiff does not contest-that it was his belief at the relevant times that the prescribed pork-free diet was in conformance with Johnson's Islamic dietary restrictions. *See, e.g.,* Guiffere Aff. (Dkt. No. 33-3) ¶ 6. Guiffere's belief in this regard was apparently influenced in large part by an advisory chart maintained at the MCJ reflecting that the dietary beliefs of the Islamic (Muslim) religion require consumption of Kosher meals, to include "meat, but no pork or pork by-products." Hutchinson Aff. (Dkt. No. 33) ¶ 5 and Exh. A. It also should be noted that at the time in question the provision of pork-free diets to Islamic inmates had been approved by the New York courts as "satisf[ying] the constitutional requirement." *See Malik v. Coughlin,* 158 A.D.2d 833, 834, 551 N.Y.S.2d 418, 418 (3d Dep't 1990) (citing *O'Lone,* 482 U.S. at 352, 107 S.Ct. at 2406); *see also Majid v. Leonardo,* 172 A.D.2d 914, 914, 568 N.Y.S.2d 200, 201 (3d Dep't 1991). Under these circumstances I find that it was objectively reasonable for the defendant to believe that his actions in denying plaintiff's request for a vegetarian-plus-fish diet did not violate Johnson's clearly established constitutional rights. [11] *See generally Kind v. Frank,* 329 F.3d 979 (8th Cir.2003).

[11]    Undeniably, the Second Circuit has been less than generous in finding qualified immunity in settings such as that now presented. *See Ford,* 352 F.3d at 596-98. In *Ford,* for example, the Second Circuit rejected a finding of qualified immunity based upon

the failure of prison officials to provide an Islamic inmate with the Eid ul Fitr meal to celebrate the close of Ramadan, in reliance upon advice from religious authorities that postponement of the feast meal was not religiously significant. *Id.* at 597-98. The instant case, however, presents a far more compelling argument for invocation of qualified immunity, based upon facts which are strikingly similar to those involved in *Kind,* in which the Eighth Circuit endorsed a finding of qualified immunity under analogous circumstances to those now presented. 329 F.3d at 980-81.

## IV. *SUMMARY AND RECOMMENDATION*

Analysis of plaintiff's substantive free exercise and equal protection claims turn upon resolution by the factfinder of critical issues of fact, including whether his sincerely held religious beliefs require the diet which he requested, and whether legitimate penological concerns preclude providing him with the meals sought by him. I find, however, that a reasonable person in the defendant's circumstances, denying plaintiff's meal request based upon an established facility policy and a practice which has passed state court scrutiny, would not have appreciated that he or she was violating plaintiff's clearly established constitutional rights. Accordingly, I recommend a finding that defendant Guiffere is entitled to dismissal of plaintiff's claims against him on the ground of qualified immunity.

**\*10** Based upon the foregoing, it is therefor hereby

RECOMMENDED that defendant's motion for summary judgment (Dkt. No. 62) be GRANTED, and the plaintiff's complaint be DISMISSED in all respects, with prejudice with respect to defendant Guiffere, but without prejudice as to defendant Pecora.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the plaintiff by regular mail and the defendant electronically.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 3046703

---

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 902795
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Benji D. REED, Plaintiff,
v.
John DOE, 1 and Superintendent,
Eastern Correctional Facility, Defendants.

No. 9:11–CV–250.
|
Signed March 3, 2015.

**Attorneys and Law Firms**

Benji D. Reed, Pine City, NY, for Plaintiff.

Hon. Eric T. Schneiderman, New York State Attorney General, James Seaman, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 and state law, alleges violations of Plaintiff's civil rights as a result of being served contaminated food while a prisoner at Eastern Correctional Facility in New York. The matter was referred to David E. Peebles, United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

In the Report–Recommendation, dated January 30, 2015, Magistrate Judge Peebles recommends that the Defendants' Motion for Summary Judgment be granted with prejudice with respect to the Superintendent and without prejudice with respect to John Doe, 1. *See* dkt. # 56. The Plaintiff did not respond to the motion.

Defendants filed timely objections to the Report–Recommendation pursuant to 28 U.S.C. § 636(b)(1), arguing that the motion should be granted with prejudice with respect to both the Superintendent and the unnamed Defendant. When objections to a magistrate judge's Report–Recommendation are lodged, the Court makes a "*de novo* determination of those portions of the report or

specified proposed findings or recommendations to which the objection is made." *See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered the issues raised in the Defendants' objections, this Court has determined to accept the recommendation of Magistrate Judge Peebles for the reasons stated in the Report–Recommendation.

It is therefore ordered that:

(1) Defendants' Objections, dkt. # 57, to the Report–Recommendation of Magistrate Judge Peebles, dkt. # 56, are hereby OVERRULED;

(2) The Report–Recommendation is hereby ADOPTED;

(3) The Defendants' Motion for Summary Judgment, dkt. # 53, is GRANTED. Plaintiff's claims against the Defendant Superintendent are hereby DISMISSED WITH PREJUDICE. Plaintiff's claims against Defendant John Doe 1 are hereby DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

**REPORT AND RECOMMENDATION**

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Benji D. Reed, a New York State prison inmate, commenced this action in March 2011 alleging, *inter alia,* that some of the defendants employed at the Eastern Correctional Facility violated his civil rights and committed negligence during the course of his incarceration in that facility. The scope of this action has been narrowed as a result motion practice, and the only remaining cause of action is an Eighth Amendment conditions of confinement claim asserted against defendant John Doe 1, who has not been identified by plaintiff. To assist plaintiff in identifying defendant John Doe 1, the court substituted the superintendent of Eastern for purposes of service and discovery only. Following the close of discovery, the superintendent

filed the currently pending motion seeking the entry of summary judgment in his favor in light of the absence of any record evidence that he was personally involved in the allegations giving rise to this action. For the reasons set forth below, I recommend that the superintendent's motion be granted.

## I. *BACKGROUND* [1]

[1]   In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiffs favor. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003). In light of the severance and transfer of plaintiffs claims arising out of his confinement in the Southport Correctional Facility to the Western District of New York, and dismissal of plaintiffs retaliation claim against defendants M. Soto and John Doe 2, as will be discussed below, I have included only the facts relevant to plaintiff's remaining claim asserted against defendant John Doe 1.

**\*2**  Plaintiff is a prison inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally Dkt. No. 30.* Although he is now incarcerated elsewhere, at the times relevant to his claims Reed was confined in the Eastern Correctional Facility ("Eastern"), located in Napanock, New York. *Id.; Dkt. No. 55.*

Plaintiff commenced this action on March 8, 2011, asserting the deprivation of his constitutional and federal statutory rights, as well as common law claims, against two unnamed defendants, designated as John Doe 1 and John Doe 2, and defendant M. Soto, a Corrections Counselor at Eastern.[2] *See generally Dkt. No. 30.* In his complaint, as amended, plaintiff alleges that on September 14, 2010, he became ill after consuming spoiled corn and rice at the Eastern mess hall. *Id.* at 3. As a result, plaintiff suffered abdominal pain and extreme bouts of diarrhea. *Id.* Plaintiff alleges that defendant John Doe 1 was advised that the corn and rice emitted a foul odor and could be contaminated, but failed to heed the warning and ordered that it be served to the general prison population. *Id.* at 4.

[2]   Plaintiff's complaint also named seven corrections employees assigned to the Southport Correctional Facility ("Southport") as defendants. All claims stemming from events occurring at Southport were

severed from those arising out of Eastern, however, and were transferred to the Western District of New York by order issued by Senior District Judge Thomas J. McAvoy on August 2, 2011. *Dkt. No. 4.*

Plaintiff was initially treated on the following day at the Eastern medical clinic, along with several other infected inmates, and was given "dymo tablets" to address the condition. *Dkt. No. 30 at 3.* He was subsequently directed to return to the clinic later that day, however, and instructed to discontinue the use of the dymo tablets and told that he would instead be placed on a water diet and confined to his cell for one day to flush out any infection. *Id.* at 4.

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on March 8, 2011. *Dkt. No. 1.* As defendants, plaintiffs complaint named two "Doe" defendants, M. Soto, and seven corrections employees assigned to Southport. *Id.* at 2. The complaint asserted claims under the Eighth Amendment to the United States Constitution; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.;* section 504 of the Rehabilitation Act of 1973 ("section 504"), 29 U.S.C. § 794; and New York State common law. *See generally id.* Based upon an initial review of plaintiffs complaint and an accompanying *in forma pauperis* application, pursuant to 28 U.S.C. § 1915(e)(2), Senior District Judge Thomas J. McAvoy directed all claims from the events occurring at Southport severed and transferred to the Western District of New York. *Dkt. No. 4.*

In response to plaintiff's complaint, defendant Soto, the sole remaining named defendant in the action following Judge McAvoy's decision, moved for dismissal of plaintiffs claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Dkt. No. 11.* Plaintiff followed with a motion, filed on December 7, 2011, seeking leave to amend his complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. *Dkt. No. 14.* Plaintiff's motion was intended, in part, to clarify and expand upon the allegations set forth in his original complaint related to the events at Eastern and eliminate claims and references to the defendants affected by the transfer to the Western District of New York.[3] *Id.* In a report issued on July 26, 2012, I recommended dismissal of plaintiff's claims against defendant Soto with leave to amend regarding plaintiff's cause of action for

retaliation. *Dkt. No. 22.* Judge McAvoy adopted that recommendation on September 30, 2012, and plaintiff was granted leave to replead within thirty days. *Dkt. No. 28.*

---

3    In his motion, plaintiff also sought the appointment of *pro bono* counsel to represent him in the action. *Dkt. No. 15.* That motion was denied without prejudice. *Dkt. No. 17.*

**\*3** Plaintiff availed himself of the opportunity to amend, and submitted an amended complaint on October 12, 2012. *Dkt. No. 30.* Upon review of that amended complaint, I issued a report dated November 9, 2012, in which I recommended that (1) the amended complaint be rejected insofar as it asserts a retaliation claim against defendant Soto and that the claim be dismissed with prejudice; (2) the amended complaint be rejected with respect to plaintiffs state common law claims against defendant John Doe 2; (3) plaintiffs amended complaint be accepted as it relates to the constitutional claims asserted against defendant John Doe 1; (4) the superintendent at Eastern be added as a defendant for the purposes of service and discovery to assist plaintiff in identifying defendant John Doe 1; and (5) Judge McAvoy direct plaintiff to take reasonable steps to ascertain the identity of defendant John Doe 1 and seek permission to add that individual by name as a defendant in the action. *Dkt. No. 33 at 18–21.* On September 27, 2013, Judge McAvoy adopted these recommendations. *Dkt. No. 39.*

Following the joinder of issue, I issued a standard Rule 16 scheduling order, which, *inter alia,* required that both parties provide mandatory disclosures and established April 4, 2014 as a deadline for completion of all discovery in the action. *Dkt. No. 49.*

Following the close of discovery, the Eastern superintendent filed the pending motion seeking the entry of summary judgment in his favor. *Dkt. No. 53.* The superintendent contends that dismissal is appropriate in light of the fact that he is not implicated in plaintiffs claims and plaintiff has failed to identify and join the individual identified in the amended complaint as defendant John Doe 1. Plaintiff has not responded to defendant's motion, which is now ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

**\*4** A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4; *Sec. Ins. Co.,* 391 F .3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. *Plaintiff's Failure to Respond to the Superintendent's Motion*

Pursuant to local rule 7.1(b)(3), by failing to oppose the Eastern superintendent's motion, plaintiff has effectively consented to the granting of the relief sought. That rule provides as follows:

> Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(b)(3); *see also Jackson v. Fed. Express, 766 F.3d 189, 194 (2d Cir.2014)* (holding that the district courts may enter summary judgment in favor of the moving party where the non-moving party fails to respond in opposition, but not without first "ensur[ing] that each statement of material fact is support by record evidence sufficient to satisfy the movant's burden of production" and "determin[ing] whether the legal theory of the motion is sound").

In this case, plaintiff has not responded to the pending motion, which was properly filed by the superintendent. Through his motion, the superintendent has satisfied his burden of demonstrating entitlement to the relief requested. With respect to the question of the superintendent's burden, I note that his "burden of persuasion is lightened such that, in order to succeed, [their] motion need only be 'facially meritorious.' " *See Rodriguez v. Goord,* No. 04–CV–0358, 2007 WL 4246443, at *1 (Scullin, J., *adopting report and recommendation by* Lowe, M.J.) (finding that whether a movant has met its burden to demonstrate entitlement to a dismissal under local rule 7.1(b)(3) "is a more limited endeavor than a review of a contested motion to dismiss" (citing cases)). [4] Because the superintendent has accurately cited both proper legal authority and evidence in the record supporting the grounds upon which his motion is based, and plaintiff has failed to respond in opposition, I find the motion is facially meritorious. *Jackson,* 766 F.3d at

194. Accordingly, I recommend that the court grant the superintendent's motion on this basis. [5]

[4]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

[5]    For the sake of completeness, I have addressed the merits of the superintendent's motion for summary judgment as well.

### C. *Eastern Superintendent*

**\*5** The superintendent at Eastern, the sole remaining named defendant in the action, has moved for the entry of summary judgment dismissing plaintiff's claims against him based upon lack of personal involvement. *Dkt. No. 53–14 at 5–7.* "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994)* (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal, 556 U .S. at 683* ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic"). To prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.,* No. 91–CV–8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

When the superintendent was added as a defendant by the court, it was done for the express purpose of permitting plaintiff to engage in discovery in an attempt to ascertain the identity of defendant John Doe 1. In my report dated November 9, 2012, I stated the following:

> I recommend that the clerk of the court be directed to add the superintendent of Eastern as a defendant for service and discovery purposes only. By doing so, I

do not suggest in any way that the superintendent of Eastern was personally involved in the events allegedly giving rise to the Eighth Amendment claim asserted against defendant John Doe # 1.

*Dkt. No. 33 at 16.* Since the issuance of that report and recommendation, plaintiff has not identified defendant John Doe 1, and there is no record evidence suggesting that the superintendent was personally involved in the decision to serve allegedly spoiled food to the inmates at Eastern. [6]

[6]      As a supervisory employee, the superintendent at Eastern cannot be held liable for damages under section 1983 solely because he occupies that position of authority, or on the basis of *respondeat superior. Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), rev'd on other grounds sub nom. *Ashcroft v. Iqbal,* 556 U.S. 554 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501. The record evidence, including plaintiff's amended complaint, does not suggest that any of these grounds are applicable in this instance.

In light of the fact that plaintiff has failed to adduce any evidence suggesting that the superintendent was personally involved in the alleged constitutional violation, and his presence in the lawsuit for discovery purposes is no longer needed, I recommend that plaintiff's claims against him be dismissed.

    D. *John Doe 1*

In his motion, the Eastern superintendent also urges the court to dismiss plaintiff's claims against defendant John Doe No. 1. *Dkt. No. 53–14* at 7.

In the court's order issued on September 27, 2013, plaintiff was directed to take reasonable steps to ascertain the identity of defendant John Doe 1. *Dkt. No. 39 at 6.* In that decision, Judge McAvoy pointedly advised that "[p]laintiff's failure to ascertain the identity of Defendant John Doe # 1 will result in the dismissal of this action[.]" *Id.* Because plaintiff failed to heed that warning and take timely measures reasonably calculated to ascertain the identity of John Doe # 1, I recommend that his claims against that defendant be dismissed without prejudice. [7] *See, e.g., Pravada v. City of Albany,* 178 F.R.D. 25, 26 (N.D.N.Y.1998) (Scullin, J.) (dismissing the unidentified "John Doe" and "Jane Roe" defendants after the plaintiff had been provided "over two years to identify and serve these individuals, including the full discovery period").

[7]      On or about April 29, 2014, plaintiff mailed to Assistant Attorney General James J. Seaman, Esq., a request for the production of documents. *Dkt. No. 53–11.* The request bears the correct caption but an incorrect civil action number (No. 10–CV–1446) (LEK/RFT)) and was not received by Attorney Seaman until May 22, 2014. *Id.; Dkt. No. 53–1 at 3.* Plaintiff's demands, however, relate to the allegations in his amended complaint, confirming that they were served in connection with this matter. *Dkt. No. 53–11 at 1.* In response, the superintendent properly objected to the discovery demands as untimely in light of the fact that (1) the deadline for completion of all discovery was April 4, 2014, and (2) plaintiff was alerted to his obligation to serve written discovery demands sufficiently in advance of the discovery deadline to ensure that the latest date on which responses would be due would fall on or before the discovery deadline. *See Dkt. No. 49 at 4; Dkt. No. 53–12.*

IV. *SUMMARY AND RECOMMDATION*

**\*6** The sole remaining claim in this action is asserted against an unidentified corrections employee based on plaintiffs allegation that he served spoiled food to the general inmate population at Eastern. In deference to his *pro se* status, the court directed that the superintendent at Eastern be named as a defendant so that plaintiff could be afforded a reasonable opportunity to engage in discovery calculated to lead to the identity of defendant John Doe 1. Despite this and the court's warnings that the failure to identify defendant John Doe 1 would result in dismissal of plaintiffs claims against him, plaintiff has not yet done

so. Accordingly, I recommend that all of the remaining claims in this action, which was commenced nearly four years ago, be dismissed with regard to the superintendent, who was not personally involved in the constitutional violations alleged, and as against defendant John Doe 1, who remains unidentified. Accordingly, it is hereby respectfully

RECOMMENDED that the Eastern superintendent's motion for summary judgment (*Dkt. No. 53* ) be GRANTED; and it is further

RECOMMENDED that plaintiff's claims against defendant superintendent be DISMISSED with prejudice and his claims against defendant John Doe 1 be DISMISSED without prejudice.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed Jan. 30, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 902795

---

    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

***MEMORANDUM DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"),
against numerous employees of the New York State or the
Central New York Psychiatric Center ("Defendants"),
are Plaintiff's motion to proceed *in forma pauperis,* his
motion for a temporary restraining order and preliminary
injunction, and his motion for appointment of counsel.
(Dkt.Nos.2, 3, 4.) [1] For the reasons set forth below,
Plaintiff's motion to proceed *in forma pauperis* is granted;
his motion for a preliminary injunction is denied; his
motion for appointment of counsel is denied; Plaintiff's
claims of deliberate indifference to his mental health
needs against Defendants Bill, Carver and DeBroize are
*sua sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are

*sua sponte* dismissed without prejudice and with leave to
amend in this action in accordance with Fed.R.Civ.P.
15; Sgt. Sweet is *sua sponte* dismissed without prejudice
as a Defendant in this action; the Clerk is directed to
issue summonses, and the U.S. Marshal is directed to
effect service of process on Defendants Davis, Sill, and
Nicolette.

[1]     This is the fourth civil rights action filed by Plaintiff
        in this District. Generally, two of these actions arose
        out of Plaintiff's refusal to consent to a strip search
        and the subsequent actions taken against Plaintiff
        as a result of his refusal. *See Groves v. New York,*
        09–CV–0406, Decision and Order (N.D.N.Y. filed
        May 11, 2009) (Hurd, J.) (*sua sponte* dismissing
        complaint pursuant to 28 U.S.C. § 1915[e][2][B] );
        *Groves v. The State of New York,* 9:09–CV–0412,
        Decision and Order (N.D.N.Y. filed Mar. 26, 2010)
        (Sharpe, J.) (granting defendants' motion to dismiss
        the complaint pursuant to Fed.R.Civ.P. 12[b][6] ).
        The third action alleged numerous violations of
        Plaintiff's constitutional rights during the period July
        23, 2009, and August 26, 2009, and was dismissed
        without prejudice upon Plaintiff's request in October,
        2010. *See Groves v. Maxymillian,* 9:09–CV–1002,
        Decision and Order (N.D.N.Y. filed Oct. 8, 2010)
        (Suddaby, J.). As a result, it does not appear that
        the current action is barred because of res judicata,
        collateral estoppel, and/or the rule against duplicative
        litigation.

**I. RELEVANT BACKGROUND**
On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.* (Dkt. Nos.1,
2.) [2] Liberally construed, Plaintiff's Complaint alleges
that the following constitutional violations against him
occurred during his confinement at Central New York
Psychiatric Center ("CNYPC"): (1) Defendants Davis and
Sill used excessive force against him under the Eighth
and/or Fourteenth Amendments; (2) Defendant Nicolette
knew of and failed to take action to protect Plaintiff
from the assault under the Eighth and/or Fourteenth
Amendments; (3) Defendants Bill, Carver, and DeBroize
were deliberately indifferent to his mental health needs
under the Eighth and/or Fourteenth Amendments;
and (4) Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, Bosco, and Hogan failed to "adequately
train the staff under their supervision" and to take
appropriate action in response to the incident. (*See*

*generally* Dkt. No. 1.) For a more detailed description of Plaintiff's claims, and the factual allegations giving rise to those claims, the reader is referred to Part III.B of this Decision and Order.

[2]    At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the Court finds that Plaintiff may properly commence this action *in forma pauperis.* (Dkt. No. 2.)

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the sufficiency of the allegations that Plaintiff has set forth in his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is because Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that —... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]    The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### A. Governing Legal Standard

**\*2**  It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by

2012 WL 651919

the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

[4]  See *Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[5]  See *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[6]  It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a) (2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. See *Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**B. Analysis of Plaintiff's Complaint**

2012 WL 651919

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009). [7]

[7]    *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them

that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

### 1. Excessive Force Claims Against Defendants Davis, Still and Nicolette

**\*4**  Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an

Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp.

35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

---

[8]   Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

[9]   Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment

when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading. [10] Rather, this claim is hereby dismissed with prejudice.

[10] The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. [11]

[11] *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not

2012 WL 651919

establish supervisory liability." *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y.1997).[12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally*, 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011).[13]

[12]    *See also Gillard v. Rosati*, 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin*, 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin*, 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

[13]    *See also Bernstein v. N.Y.*, 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxmillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force

on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxmillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court—to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

## IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker*, 00–CV–912, 2006 WL 618576, at *3 (W.D.N.Y. Mar.10, 2006) (quoting *Devoe v. Herrington*, 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted

unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill,

Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case. [14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

[14] For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2)

it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

**\*10  ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** [15] and it is further

[15] Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is **DENIED;** and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED** without prejudice; and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* **DISMISSED** with prejudice pursuant to 28

U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* ***DISMISSED without prejudice and with leave to amend*** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* ***DISMISSED without prejudice and with leave to be reinstated*** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General,

together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 555513
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Taheen HAYES, Plaintiff,
v.
T. DAHKLE, et al., Defendants.

9:16-CV-1368
|
Signed 01/19/2018

**Attorneys and Law Firms**

Taheen Hayes, Alden, NY, pro se.

Helena O. Pederson, William A. Scott, New York State
Attorney General, Albany, NY, for Defendants.

**DECISION & ORDER**

Thomas J. McAvoy, Senior, U.S. District Judge

**I. INTRODUCTION**

**\*1** This *pro se* action brought pursuant to 42 U.S.C.
§ 1983 was referred to the Hon. Christian F. Hummel,
United States Magistrate Judge, for a Report and
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c).

In his October 27, 2017 Report-Recommendation
and Order [Dkt. No. 33], Magistrate Judge Hummel
recommends that defendants' partial motion to dismiss
[Dkt. No. 26] be granted "[i]nsofar as it seeks dismissal of
plaintiff's claims against C.O. Dahkle, C.O. Hoffman, and
C.O. Meier for verbal harassment and/or threats," and
that these claims be dismissed with prejudice. Dkt. No. 33,
p. 36. Magistrate Judge Hummel also recommends that
defendants' partial motion be denied:

(1) Insofar as it seeks dismissal of plaintiff's Eighth
Amendment claim against C.O. Dahkle for sexual
assault,

(2) Insofar as it seeks dismissal of plaintiff's claims
against Supt. Martuscello for verbal harassment and/or
threats,

(3) Insofar as it seeks dismissal of plaintiff's First
Amendment claims against C.O. Meier and C.O.
Hoffman for retaliation,

(4) Insofar as it seeks dismissal of plaintiff's supervisory
liability claims against Supt. Martuscello for C.O.
Dahkle's verbal harassment and/or threats, [and]

(5) [1] Insofar as it seeks dismissal of plaintiff's
supervisory liability claims against Supt. Martuscello
and DSS Shanley for C.O. Meier's retaliation.

*Id.*, pp. 36-37.

[1]    This sub-paragraph was enumerated as "(4)" in the
Report-Recommendation and Order.

Defendants object to that portion of the Report-
Recommendation and Order denying their motion
"insofar as it seeks dismissal of plaintiff's supervisory
liability claims against Supt. Martuscello for C.O.
Dahkle's verbal harassment and/or threats." (Obj., Dkt.
No. 36)(quoting Dkt. No. 33, at p. 36).

**II. STANDARD OF REVIEW**

When objections to a magistrate judge's report and
recommendation are lodged, the district court makes a
"*de novo* determination of those portions of the report
or specified proposed findings or recommendations to
which objection is made." 28 U.S.C. § 636(b)(1); *see also
United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.
1997) (The Court must make a *de novo* determination
to the extent that a party makes specific objections
to a magistrate judge's findings.). After reviewing the
report and recommendation, the Court may "accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge. The
judge may also receive further evidence or recommit the
matter to the magistrate judge with instructions." 28
U.S.C. § 636(b).

**III. DISCUSSION**

**a. Defendants' Objection**

As Magistrate Judge Hummel correctly points out,
"[a]bsent a subordinate's underlying constitutional
violation, there can be no supervisory liability." Dkt. No.
33, at p. 30 (citing *Hernandez v. Keane*, 341 F.3d 137,

145 (2d Cir. 2003); *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011)). The Court accepts and adopts Magistrate Judge Hummel's conclusion that C.O. Dahkle's statements "constitute vague threats that lack the specificity and seriousness 'to deter an inmate from exercising his First Amendment rights' as no real threat exists." *Id.* p. 19 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). The Court also agrees with Magistrate Judge Hummel that C.O. Dahkle's statements and threats "do not qualify as constitutional violations because 'harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim.' " *Id.* p. 18 (quoting *Quezada v. Roy*, No. 14 Civ. 4056(CM), 2015 WL 5970355, at *21 (S.D.N.Y. Oct. 13, 2015)); *see also Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)("To prove a First Amendment retaliation claim under Section 1983, a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' ")(quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004), *overruled on other grounds by Swierkiewicz v. Sorema, N. A.*, 534 U.S. 506, 560 (2002)). Because the underlying claims against C.O. Dahkle for verbal harassment and/or threats will be dismissed, plaintiff cannot sustain supervisory liability claims against Supt. Martuscello for C.O. Dahkle's verbal harassment and/or threats. Thus, Defendants' objection is sustained.

### b. First Amendment Retaliation Claims Against C.O. Langtry, C.O. Bence, and C.O. Coon

**\*2** As indicated in the Report-Recommendation and Order, plaintiff concedes that he fails to allege legally viable First Amendment retaliation claims against defendants C.O. Langtry, C.O. Bence, and C.O. Coon. Dkt. No. 33, at 23 (citing Dkt. No. 30 at 20). Thus, Magistrate Judge Hummel recommends in the Discussion section that "plaintiff's retaliation claims against C.O. Langtry, C.O. Bence, and C.O. Coon be dismissed as plaintiff fails to provide any factual allegations to support a claim that these defendants violated his First Amendment rights." *Id.* at 25-26. This recommendation, however, does not appear in the Conclusion section of the Report Recommendation and Order.

Because plaintiff has already been given an opportunity to amend his complaint, and because he does not assert that there are any addition facts that would support legally

plausible First Amendment retaliation claims against defendants C.O. Langtry, C.O. Bence, and C.O. Coon, these claims will be dismissed without leave to re-plead.

### IV. CONCLUSION

For the reasons discussed above, the Court **ACCEPTS AND ADOPTS** Magistrate Judge Hummel's October 27, 2017 Report-Recommendation and Order **IN PART**, and **MODIFIES IT IN PART** in accordance with this decision.

Accordingly, defendants' partial motion to dismiss [Dkt. No. 26] is **GRANTED**:

(1) insofar as it seeks dismissal of plaintiff's claims against C.O. Dahkle, C.O. Hoffman, and C.O. Meier for verbal harassment and/or threats,

(2) insofar as it seeks dismissal of plaintiff's supervisory liability claims against Supt. Martuscello for C.O. Dahkle's verbal harassment and/or threats.

and

(3) insofar as it seeks dismissal of plaintiff's First Amendment retaliation claims against C.O. Langtry, C.O. Bence, and C.O. Coon.

These claims are **DISMISSED WITH PREJUDICE**.

Further, Defendants' partial motion to dismiss [Dkt. No. 26] is **DENIED**:

(1) Insofar as it seeks dismissal of plaintiff's Eighth Amendment claim against C.O. Dahkle for sexual assault,

(2) Insofar as it seeks dismissal of plaintiff's claims against Supt. Martuscello for verbal harassment and/or threats,

(3) Insofar as it seeks dismissal of plaintiff's First Amendment claims against C.O. Meier and C.O. Hoffman for retaliation,

and

(4) Insofar as it seeks dismissal of plaintiff's supervisory liability claims against Supt. Martuscello and DSS Shanley for C.O. Meier's retaliation.

2018 WL 555513

**IT IS SO ORDERED.**

All Citations

Slip Copy, 2018 WL 555513

2010 WL 843872
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Derrick THOMPSON, Plaintiff,

v.

Mr. CARLSEN, Superintendent of
Ulster Correctional Facility; White, Ms.,
Administrative Nurse; Franza, Nurse,
Ulster Correctional Facility; Crawley, Nurse,
Ulster Correctional Facility, Defendants.

Civ. No. 9:08-CV-487 (TJM/RFT).
|
March 10, 2010.

**Attorneys and Law Firms**

Derrick Thompson, Rego Park, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Krista A. Rock, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior District Judge.

**I. INTRODUCTION**

 **\*1** This *pro se* action brought pursuant to 42 U.S.C.
§ 1983 was referred to the Hon. Randolph F. Treece,
United States Magistrate Judge, for a Report and
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c). No objections to the Report-
Recommendation and Order dated February 16, 2010
have been filed, and the time to do so has expired.
Furthermore, after examining the record, this Court has
determined that the Report-Recommendation and Order
is not subject to attack for plain error or manifest
injustice. Accordingly, the Court adopts the Report-
Recommendation and Order for the reasons stated
therein.

It is therefore,

**ORDERED** that Defendants' Motion for Summary
Judgment (Dkt. No. 24) is **GRANTED** and the Complaint
(Dkt. No. 1) is **DISMISSED** in its entirety. The Clerk
of the Court is instructed to enter judgment in favor of
Defendants and to close the file in this matter.

**IT IS SO ORDERED.**

**REPORT-RECOMMENDATION and ORDER**

RANDOLPH F. TREECE, United States Magistrate
Judge.

*Pro se* Plaintiff Derrick Thompson has filed a civil
rights action, pursuant to 42 U.S.C. § 1983, alleging
that Defendants were deliberately indifferent to his
serious medical needs and therefore violated his Eighth
Amendment rights. Dkt. No. 1, Compl. Defendants now
move for summary judgment pursuant to FED. R. CIV.
P. 56(c). Dkt. No. 24. Plaintiff opposes the Motion. Dkt.
No. 26. For the reasons that follow, it is recommended
that the Defendants' Motion be **GRANTED.**

**I. FACTS**

The following facts were derived mainly from the
Defendants' Statement of Material Facts, submitted in
accordance with N.D.N.Y.L.R. 7.1, which were not,
in their entirety, specifically countered nor opposed by
Plaintiff. *See* N.D.N.Y.L.R. 7.1(a)(3) ("*Any facts set forth
in the Statement of Material Facts shall be deemed admitted
unless specifically controverted by the opposing party.*"
(emphasis in original)). However, where Plaintiff has
contradicted Defendants' Statement of Material Facts,
either in his Complaint or in his Response in Opposition
to Defendants' Motion, we will not deem those facts
admitted for the purposes of addressing this Motion.

At around 9 a.m. on October 9, 2007, while Plaintiff was
housed at Ulster Correctional Facility ("Ulster"), Plaintiff
complained to his dorm officer about pain in his chest.
Dkt. No. 24, Defs.' 7.1 Statement at ¶ 1. The dorm officer
called Defendant Nurse Franza and informed her that
Plaintiff wished to be seen by medical staff as soon as
possible. *Id.* at ¶ 2. At the time Franza received that call,
the regular sick call for that day was over, nonetheless, an

emergency sick call procedure is available every day for inmates who need to be seen for a medical emergency. *Id.* at ¶¶ 3-4.

At around 9:30 a.m. that morning, Defendant Nurse Crawley received a phone call from a corrections officer working in Plaintiff's housing dorm, stating that Plaintiff was complaining about burning in his chest and wanted to be seen by medical staff. *Id.* at ¶ 9. Crawley advised the corrections officer that Plaintiff should sign up for the next available sick call. *Id.* at ¶ 10; Pl.'s Resp. in Opp'n to Defs.' Mot., Mem. of Law at p. 2. The corrections officer asked Crawley whether Plaintiff should be sent for emergency sick call, to which Crawley responded that Plaintiff's description of his medical problem did not seem to constitute a medical emergency. Defs.' 7.1 Statement at ¶¶ 11-12. Crawley questioned the officer about whether Plaintiff was showing any signs of distress, including profuse sweating, chest pain and/or difficulty breathing. *Id.* at ¶ 13; Pl.'s Mem. of Law at pp. 3-4. There was no indication that Plaintiff was exhibiting any such symptoms. Defs.' 7.1 Statement at ¶ 14.

**\*2** Thereafter, a sergeant sent Plaintiff to the infirmary to be seen by medical staff. *Id.* at ¶ 15. Nurse Crawley attended to Plaintiff upon his arrival in the infirmary, where he complained of chest pain. *Id.* at ¶¶ 16-17; Pl.'s Mem. of Law at p. 2. Plaintiff left the emergency room area without permitting Crawley to complete a more thorough physical examination. Defs.' 7.1 Statement at ¶ 21. Crawley issued Plaintiff a Misbehavior Report, alleging that after he arrived at the infirmary on October 9, 2007, Crawley denied his request for non-emergency medication and Plaintiff became loud, argumentative, and refused further assessment. *Id.* at ¶ 22; Dkt. No. 24-10, Nurse W. Crawley Aff., dated June 10, 2009, Ex. C, Misbehavior Rep., dated Oct. 9, 2007 (hereinafter "Misbehavior Rep."). In the Misbehavior Report, Plaintiff was charged with interference with an employee, harassment, and disobeying a direct order. Defs.' 7.1 Statement at ¶ 22; Misbehavior Rep. Plaintiff pled guilty to all three charges. Defs.' 7.1 Statement at ¶ 23.

On October 10, 2007, Plaintiff again went to the infirmary and was seen by Defendant Franza. *Id.* at ¶ 24. Plaintiff filed a Grievance regarding the allegedly inappropriate medical care provided on October 9, 2007. *Id.* at ¶ 25. That Grievance was processed pursuant to departmental policy and was ultimately denied. *Id.* at ¶¶ 28-29.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any,' " that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) and *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)).

**\*3** When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736,

742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

**B. Eighth Amendment Claim**

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The plaintiff must allege conduct that is " 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992)) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway I,* 37 F.3d 63, 66 (2d Cir.1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic

and substantial pain." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir.1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301-03 (1991); *Hathaway I,* 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836. This requires "something more than mere negligence ... but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer* ). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

**\*4** In this case, Plaintiff asserts that Defendants Franza and Crawley were deliberately indifferent to his serious medical needs when they allegedly denied him treatment for his chest pain on October 9 and 10, 2007.

*1. Claims against Crawley*

In his Complaint, Plaintiff alleges that on October 9, 2007, Defendant Crawley denied his request to see a doctor and denied him medical treatment. Compl. at p. 3. Plaintiff further asserts that he was seen by a doctor on the following day, and was diagnosed as having a heart murmur. *Id.* In his Grievance, dated October 9, 2007, Plaintiff made the following allegations: On October 9th, Crawley denied his request to see a doctor through a corrections officer with whom she was speaking on the telephone. Grievance at p. 2. Thereafter, Plaintiff was sent down to the medical clinic, where Crawley again denied him the medical attention he needed. *Id.*

In her Affidavit submitted in support of the Motion for Summary Judgment, Crawley affirms that on the morning of October 9th, she received a phone call from a corrections officer working in Plaintiff's housing dorm,

who told her that Plaintiff "was complaining of burning in his chest and that he was out of his acid reflux medication and wanted to be seen by medical staff as soon as possible." [1] Crawley Aff. at ¶¶ 5-6. Crawley swears that she asked the officer "whether plaintiff was showing any signs of distress, including profuse sweating, chest pain and/or difficulty breathing, which would have been indicators of some sort of cardiac event." Crawley Aff. at ¶ 8. However, because "[t]here was no indication that plaintiff was suffering any such symptoms," Crawley concluded that it was not an emergency situation, and "advised the Corrections Officer that [Plaintiff] should sign up for the next available regular sick call." Crawley Aff. at ¶¶ 7-9. Crawley states that shortly thereafter, a sergeant called and informed her that he was sending Plaintiff to the infirmary. *Id.* at ¶ 10. According to Crawley, upon Plaintiff's arrival at the infirmary, he showed no signs of physical distress, complained only of a burning sensation in his chest, and asked for more acid reflux medication, showing her a prior prescription for acid reflux medication. *Id.* at ¶ 11. Plaintiff denies asking for medication, Pl.'s Mem. of Law at p. 2, however, he stated in his Grievance that *"when I asked for something for the pain* [ ] ... I was told no," and that he "tried to show [Crawley] what a [ ] doctor on Riker's Island gave [him] when [he] had this problem [ ]," Grievance at p. 2 (emphasis added). Thus, Plaintiff's statement in his Grievance confirms that he did in fact ask for medication to remedy his chest pain.

[1]    In his Response to Defendants' Motion, Plaintiff denies complaining of burning in his chest. Pl.'s Resp. at p. 4. However, we note that Plaintiff stated in his Complaint that his "chest was burning," Compl. at p. 3, and complained in his Grievance that he "was stuck in a dorm left with a burning chest!," Grievance at p. 2.

Crawley "advised Plaintiff that in order to have his medication refilled, [she] could not do so as a Nurse, he would have to sign up for regular sick call." Crawley Aff. at ¶ 12. At that point, Plaintiff "became very loud and argumentative[,] insisting that he be given medication at that time. He then left the emergency room area without permitting me to complete a more thorough examination." *Id.* As a consequence, Crawley issued Plaintiff a Misbehavior Report on October 9th charging him with interference with an employee, harassment, and disobeying a direct order; Plaintiff later pled guilty to all three charges. [2] *Id.* at ¶ 15; Dkt. No. 24-16, Scott

Carlsen Aff., dated June 22, 2009, Ex. C, Disciplinary Hr'g Tr., dated Oct. 20, 2007, at p. 4 (pleading guilty with an explanation to all three charges).

[2]    In his Complaint, Plaintiff does not bring any claims related to the filing of the Misbehavior Report. In his Response to Defendants' Motion, Plaintiff alleges that the Misbehavior Report was false and retaliatory in nature. These new and conclusory claims are addressed below in Part II.B.3.

**\*5** Crawley asserts that Plaintiff has failed to demonstrate any deliberate indifference on her part. We agree. Plaintiff has offered no evidence to rebut Crawley's sworn Affidavit. Furthermore, based on the allegations contained in Plaintiff's Grievance, it appears that Crawley examined Plaintiff, determined his condition was non-severe based on his subjective complaints and his lack of symptoms, and told him to submit his request for medicine in accordance with standard non-emergency procedures. Even assuming Crawley was incorrect in her medical assessment of Plaintiff's condition, [3] such a misdiagnosis does not constitute deliberate indifference and therefore is not a valid basis for an Eighth Amendment claim. *Estelle v. Gamble,* 429 U.S. at 106 (a claim that a medical professional "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, to the extent Plaintiff brings this § 1983 claim on a theory of negligence, *see* Compl. at p. 5, that claim must fail. *Id.* Finally, Plaintiff's preference for a different course of treatment than the one provided does not form the basis of a valid § 1983 claim; a prisoner does not have the right to the treatment of his choice. *Chance v. Armstrong,* 143 F.3d at 703.

[3]    Defendants do not challenge Plaintiff's factual allegation that he suffered from a heart murmur condition nor his legal conclusion that his condition was sufficiently serious under the objective prong of the Eighth Amendment test. Thus, for the purposes of addressing Defendants' Motion, we need not address those issues.

Because Plaintiff has failed to demonstrate that a material question of fact exists with respect to his Eighth Amendment claim based on Crawley's medical treatment, it is recommended that Summary Judgment be **granted** on this claim.

### 2. Claims against Franza

In his Complaint, Plaintiff alleges that Franza denied his request to see a doctor when the corrections officer in his unit called the infirmary on October 9, 2007. Compl. at p. 3. In support of his Motion for Summary Judgment, Franza has submitted an Affidavit in which he states that the corrections officer who called the infirmary on October 9th told him that "inmate Thompson was complaining of heartburn and was out of his acid reflux medication and wanted to be seen by medical staff as soon as possible." Dkt. No. 24-14, C. Franza Aff., dated June 10, 2009, at ¶ 5. Franza states that neither heartburn nor a request for a medication refill constitute a medical emergency and therefore, he advised Plaintiff to sign up for the next regular sick call day. *Id.* at ¶ 8. Finally, Franza states that his "entire understanding of inmate Thompson's condition was based on what the Corrections Officer told [him]. In [his] professional opinion, there was nothing in the description provided by the officer that led [him] to believe plaintiff was in any danger or had a condition requiring immediate medical attention." *Id.* at ¶ 9.

Again, Plaintiff has failed to rebut Franza's Affidavit, in which he swears that based on the information provided to him by the corrections officer, he determined that Plaintiff did not require immediate medical attention. As previously discussed, such a medical assessment, even if wrong, does not constitute deliberate indifference. *Estelle v. Gamble,* 429 U.S. at 106.

**\*6** For the above reasons, it is recommended that Summary Judgment be **granted** on Plaintiff's Eighth Amendment claim against Franza.

### 3. Allegations against Crawley and Franza raised in Plaintiff's Response in Opposition to Defendants' Motion

Although unmentioned in the Complaint, Plaintiff alleges in his Response to Defendants' Motion that he saw Franza during another emergency sick call on October 10, 2007. Pl.'s Mem. of Law at pp. 2-3. Plaintiff alleges that Franza threatened him during his sick call visit and conspired with Crawley to "pre-date" the Misbehavior Report in retaliation for his October 9th Grievance. These

new allegations were not added to the Complaint by amendment, and are therefore improper. However, even if we were to consider the merits of these new claims, they would still fail.

It is well-settled in this Circuit that "threats do not amount to violations of constitutional rights." *Moncrieffe v. Witbeck,* 2000 WL 949457, at \*3 (N.D.N.Y. June 29, 2000) (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)). Furthermore, there is "no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986)); *see also Gill v. Riddick,* 2005 WL 755745, at \*7 (N.D.N.Y. Mar. 31, 2005). Finally, Plaintiff's claim that Franza and Crawley conspired to file a false Misbehavior Report against him in retaliation for the Grievance he filed against them on October 9th is wholly conclusory and belied by the record. *See Bell. Atl. Corp. v. Twombly,* 550 U.S. 544-45 (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level"). Plaintiff pleaded guilty to all the charges brought in Crawley's Misbehavior Report. Disciplinary Hr'g Tr. at p. 4. Moreover, the Misbehavior Report is dated October 9, 2007, and, although Plaintiff claims that Crawley and Franza "pre-dated" the Misbehavior Report, there is no evidence on the record of such action. Nor is there any other evidence to suggest that the Misbehavior Report was issued for anything other than Plaintiff's violation of the rules, for which he admitted guilt and accepted responsibility. Thus, Plaintiff's retaliation and conspiracy claims are also without merit.

For the above reasons, it is recommended that these claims be **dismissed.**

### C. Supervisory Liability

Plaintiff names Superintendent of Ulster Correctional Facility Carlsen and Administrative Nurse Ms. White as Defendants. Beyond listing these Defendants in his Complaint, Plaintiff provides no details concerning his claims against these Defendants. However, given their supervisory roles, we assume Plaintiff seeks damages against these Defendants based on a theory of supervisory liability.

If a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> **\*7** in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane,* 341 F.3d 137, 145 (2d Cir.2003) (citing *Colon v. Coughlin,* 58 F.3d at 873) (further citations omitted).

In this case, because we find that Plaintiff's underlying Eighth Amendment claims are without merit, none of the above bases for supervisory liability are applicable. *See Blyden v. Mancusi,* 186 F.3d 252, 265 (2d Cir.1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation."). Therefore, to the extent Plaintiff intended

to bring claims of supervisory liability against Defendants Carlsen and White, it is recommended that Summary Judgment be **granted** on those claims.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Defendants' Motion for Summary Judgment (Dkt. No. 24) be **GRANTED** and the Complaint (Dkt. No. 1) **DISMISSED** in its entirety; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 843872

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 671256
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Bornallah WRIGHT, Plaintiff,
v.
David STALLONE, et al., Defendants.

9:17-CV-0487 (LEK/TWD)
|
Signed 01/31/2018

**Attorneys and Law Firms**

Lisa Anne Proskin, Proskin Law Firm, Albany, NY, for Plaintiff.

Bornallah Wright, Moravia, NY, pro se.

Katie E. Valder, New York State Attorney General, Albany, NY, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Lawrence E. Kahn, U.S. District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Bornallah Wright commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000 *et seq.*, asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 ("Complaint"). These claims concern Plaintiff's ability to practice his religion at Cayuga Correctional Facility, where he is currently confined, by praying demonstrably in the prison's outdoor yard during recreation. Id.

Presently before the Court are three motions: Plaintiff seeks preliminary injunctive relief, Dkt. No. 9 ("Preliminary Injunction Motion"),[1] and the appointment of counsel, Dkt. No. 46 ("Counsel Motion"); defendants David Stallone, Jeffrey Hale, T. Schadewald, E. Korb, Daniel Figueroa, Ora Perkins, David Haggerty, Mary Coleman, and David Infantino (collectively, "State Defendants") seek to dismiss the claims filed against them.

Dkt. No. 38 ("Motion to Dismiss"). For the reasons stated below, Plaintiff's Preliminary Injunction Motion is granted in part and denied in part; his Counsel Motion is granted; and State Defendants' Motion to Dismiss is granted in part and denied in part.

[1]    Plaintiff's Preliminary Injunction Motion, styled as an Order to Show Cause, was docketed as an exhibit to the Complaint. See Dkt. No. 1-2. To avoid confusion, the Court directed the Clerk to file a copy of the Preliminary Injunction Motion as a separate docket entry. See Dkt. No. 8 ("Order") at 1.

**II. BACKGROUND**

**A. Relevant Facts**

Plaintiff alleges that he is a practicing Muslim who is required by his faith to pray at specific times of day. Compl. at 5. Sometimes these prayers ("commonly known as salaah or salaat") must be performed during recreation, when Plaintiff is outside in the prison's yard. Id. Nevertheless, he and other Muslim inmates were "denied [the] ability to go off to an unoccupied area of the yard to pray [their] salaah." Id. at 6. Plaintiff and the other inmates were informed that a designated area in the yard for prayer could only be used by one inmate—Aurel Smith—in accordance with the terms of an agreement Smith had reached with DOCCS after nine years of litigation. Id. at 6.[2] DOCCS staff also advised Plaintiff and other inmates that they "would have to file a suit, too" if they wanted accommodations for their religious beliefs. Id.[3]

[2]    Among the documents submitted as exhibits to the Complaint is an unsigned draft "Stipulation and Order of Discontinuance Pursuant to Rule 41(A)" bearing the caption of Smith v. Artus, No. 07-CV-1150 (N.D.N.Y. Oct. 29, 2007). Dkt. No. 1-1, at 1–7. A similar Stipulation and Order, signed by the parties and District Judge Mordue, was filed in that action on March 24, 2016. See Stipulation and Order of Discontinuance, Smith v. Artus, No. 07-CV-1150 (N.D.N.Y. Mar. 24, 2016), ECF No. 188. The terms and conditions under which Smith is permitted to engage in demonstrative prayer in any DOCCS facility are set forth in paragraph 10 of the Stipulation and Order. Id. at 4–5.

[3]    According to Plaintiff, Smith advised defendant David Stallone, Cayuga's superintendent, that a "restriction to others' ability to engage in salaah was

not part of Smith's settlement nor an intended effect thereof." Compl. at 7. As alleged, Stallone told Smith that "others will have to still file suits in order to get a court order or settlement." Id.

**\*2** On August 18, 2016, Plaintiff filed an inmate grievance complaining that he was not allowed to pray his salaah in the yard. Id. at 6; see also Dkt. No. 1-1, Ex. 6 ("August Grievance"). Plaintiff requested permission to pray in the yard during recreation, as Smith was permitted to do. Aug. Grievance at 1. The Inmate Grievance Review Committee ("IGRC") denied Plaintiff's request. Compl. at 5; Aug. Grievance at 2. In support of that denial, the IGRC provided Plaintiff with a copy of a memorandum dated March 22, 2016, written by Captain J. Rocker and addressed to Cayuga's security staff regarding Smith's exclusive right to pray demonstrably in the yard. Dkt. No. 1-1, Ex. 7. The memorandum states as follows:

> The results of a recent law-suit filed by Inmate Smith, A. 02A6279 have granted this inmate the right to practice his religion (Islam) by praying in the yard during open recreation.

> Effective Wednesday March 24, 2016 Inmate Smith will be allowed to pray in the yard. There is a white painted area 5' by 5' area in the southwest corner near the weight fence. This area is the only area in which Inmate Smith will be allowed to pray.

> Inmate Smith will be the **ONLY INMATE** who will be allowed to pray in the yard.

Id. Plaintiff's appeal of the IGRC decision was denied at the facility level on August 29, 2016. Compl. at 6; Dkt. No. 1-1, Ex. 8. The Central Office Review Committee ("CORC") issued a decision dated March 22, 2017, also denying Plaintiff's appeal. Dkt. No. 1-1, Ex. 9 ("CORC notes that a recent settlement agreement permits only one specific inmate to pray in a designated area of the yard during recreation, and that other inmates are not allowed to pray there."). [4]

[4]    Inmate Jimir McMillan filed a similar grievance, dated May 5, 2016, complaining that only Smith was allowed to pray in the yard. Compl. at 5; Dkt. No. 1-1, Exs. 2–5. The IGRC denied the grievance and referenced the same memorandum written by Captain Rocker. Dkt. No. 1-1, Ex. 3. On May 25, 2016, Stallone denied McMillan's appeal. Dkt. No. 1-1, Ex. 4. CORC upheld the denial on October 19, 2016,

stating that "CORC notes that a recent settlement agreement permits only one specific inmate to pray in a designated area of the yard during recreation, and that other inmates are not allowed to pray there." Dkt. No. 1-1, Ex. 5.

Plaintiff commenced this action on May 4, 2017. Compl. On August 24, 2017, officials at Cayuga began to allow Plaintiff to pray demonstrably in the outdoor yard during recreation in a similar fashion to Smith. Dkt. No. 31 ("Preliminary Injunction Opposition") at 1. That is, Plaintiff could pray "in a designated area in the Southwest corner of the yard." Id. at 2. On January 10, 2018, pursuant to a request from the Court, Dkt. No. 57, State Defendants clarified that Plaintiff and Smith could pray simultaneously, but each designated area is separated by fifteen feet, Dkt. No. 58 ("Status Report") at 1. State Defendants also reported that officials at Cayuga had designated a third area in the yard for prayer, and that any Muslim inmate had the right to use the designated areas—not just Plaintiff and Smith. Id. [5] Each designated area could be used by only one inmate at a time, but a maximum of three inmates could pray simultaneously. Id. State Defendants did not explain why Cayuga officials altered its policy regarding demonstrable prayer with respect to Plaintiff or other Muslim inmates.

[5]    Plaintiff filed a response to the Status Report on January 24, 2018. Dkt. No. 61 ("Status Report Opposition"). In this document, Plaintiff disputes State Defendants' characterization of Cayuga's new rules regarding prayer and states that Cayuga officials have not announced that all Muslims have the right to pray demonstrably in the recreation yard. Status Report Opp'n at 2. As described below, this factual dispute does not affect the outcome of the Court's decision.

**\*3** Based upon the foregoing, Plaintiff claims that his right to practice his religion has been and continues to be impermissibly burdened by State Defendants in violation of the First Amendment and RLUIPA. Compl. at 8–9. Plaintiff also asserts a claim for the violation of his rights protected under the Equal Protection Clause of the Fourteenth Amendment. Id. at 10. He seeks an award of monetary damages and injunctive relief. Id. at 11.

### B. Procedural History

Plaintiff commenced this action on May 4, 2017. Compl. In a Decision and Order dated July 28, 2017, Dkt.

No. 8 ("Order"), the Court considered the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. The Order dismissed a number of defendants and ordered the remaining defendants to respond to the Complaint and Preliminary Injunction Motion. Order at 12–13. State Defendants filed their opposition to the Preliminary Injunction Motion on October 6, 2017, Prelim. Inj. Opp'n, to which Plaintiff replied on November 13, 2017, Dkt. No. 48 ("Preliminary Injunction Reply"). On October 23, 2017, State Defendants filed their Motion to Dismiss; Plaintiff responded in opposition on January 16, 2018, Dkt. No. 59 ("Dismiss Opposition"), to which State Defendants replied on January 23, 2018, Dkt. No. 60 ("Dismiss Reply"). Finally, Plaintiff filed his Counsel Motion on October 30, 2017. Counsel Mot.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the possibility of misconduct based on the pleaded facts, the pleader has not demonstrated that he is entitled to relief, and the action is subject to dismissal. Id. at 678–79. Nevertheless, "[f]act-specific question[s] cannot be resolved on the pleadings." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (second alteration in original) (quoting Todd v. Exxon Corp., 275 F.3d 191, 203 (2d Cir. 2001)). Presented with "two plausible inferences

that may be drawn from factual allegations," a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Id.

#### B. Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." Gen. Mills, Inc. v. Chobani LLC, 158 F. Supp. 3d 106, 114 (N.D.N.Y. 2016) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)). Generally, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter, 555 U.S. at 20.

**\*4** While a district court typically has wide discretion in determining whether to grant preliminary injunctive relief, Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 511 (2d Cir. 2005), "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of [ ] prisons," Fisher v. Goord, 981 F. Supp. 140, 167 (W.D.N.Y. 1997). "Under the Prison Litigation Reform Act ("PLRA"), preliminary injunctive relief in any civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct that harm." V.W. v. Conway, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017) (citing 18 U.S.C. § 3626(a)(2)). A court must give "substantial weight" to any adverse impact on public safety the injunctive relief might have. § 3626(a)(1)(A).

#### C. Motion to Appoint Counsel

In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon a motion for the appointment of counsel. As a threshold matter, a court must first determine whether the plaintiff's position seems likely to be of substance. Id. at 1341 (citing Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986)). If the claim meets this requirement, a court should then consider a number of other factors in making its determination, including the plaintiff's ability to investigate crucial facts and the complexity of the legal issues presented by the case. Id. Of these criteria, the most important is the merits,

i.e., "whether the indigent's position was likely to be of substance." McDowell v. State of New York, No. 91-CV-2440, 1991 WL 177271, at *1 (S.D.N.Y. Sept. 3, 1991) (quoting Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989)).

## IV. DISCUSSION

### A. Motion to Dismiss

State Defendants move to dismiss the Complaint on two grounds: First, that they are sheltered from liability by the doctrine of qualified immunity, Dismiss Mot. at 2–5, and, second, that State Defendants were not personally involved in the alleged constitutional and statutory violations, id. at 5–7. The Court notes that State Defendants' cursory submission does not distinguish between the multiple violations that Plaintiff has alleged or the different types of relief that Plaintiff sought; Plaintiff has alleged violations of his rights guaranteed by the First Amendment, RLUIPA, and the Fourteenth Amendment, and he seeks monetary damages and injunctive relief. These distinctions make a difference, as the Court will explain below.

### 1. Qualified Immunity

The defense of qualified immunity entitles public officials to freedom from suit for monetary damages, as a result of the consequences of the performance of their discretionary duties, when "their conduct does not violate clearly established rights of which a reasonable person would have been aware." Zalaski v. City of Hartford, 723 F.3d 382, 388 (2d Cir. 2013). [6] Qualified immunity is an affirmative defense, and, as such, defendants bear the burden of proving that the privilege applies. Coolick v. Hughes, 699 F.3d 211, 219 (2d Cir. 2012).

[6]   The doctrine of qualified immunity does not "bar any claim for equitable relief." Smith v. Artus, No. 07-CV-1150, 2010 WL 3910086, at *29 (N.D.N.Y. Sept. 30, 2010) (citing Pearson v. Callahan, 555 U.S. 223, 242–43 (2009)), vacated on other grounds, 522 Fed.Appx. 82 (2d Cir. 2013). There is no dispute that Plaintiff has moved for injunctive relief. Compl. at 13; Prelim. Inj. Mot. at 1. Therefore, State Defendants' argument that "the complaint should be dismissed in its entirety" because of the doctrine of qualified immunity is misplaced. Dismiss Mot. at 5.

*5   "The determination of qualified immunity depends both on the specific facts of an official's actions—e.g., 'what situation confronted [him], what acts he performed, and his motivation in performing those acts'—and on the clarity of the legal rules governing that particular conduct." Village of Freeport v. Barrella, 814 F.3d 594, 609 (2d Cir. 2016) (quoting Lore v. City of Syracuse, 670 F.3d 127, 162 (2d Cir. 2012)). In deciding whether an officer's actions were objectively reasonable in light of existing law, "the inquiry is not how courts or lawyers might have understood the state of the law at the time of the challenged conduct. Rather, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Zalaski, 723 F.3d at 389 (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

#### a. Free Exercise Claim

State Defendants are correct that, as a general matter, a prisoner's right to pray demonstrably in the recreation yard—whether alone or in congregate—was not clearly established at the time Plaintiff was prevented from doing so. Dismiss Mot. at 2–5. Although numerous prisoners have raised this claim in this Circuit since the late 1970s, no court has clearly established that prisoners have a right to pray demonstrably in the recreation yard by oneself or in small groups. See Shabazz v. Coughlin, 852 F.2d 697, 700–01 (2d Cir. 1988) ("However, as the district court conceded, this court had not then nor since directly addressed the constitutionality of restrictions on group prayer and prayer in prison yards."); Smith v. Artus, No. 07-CV-1150, 2015 WL 9413128, at *11–12 (N.D.N.Y. Dec. 22, 2015) ("Smith II") (finding that defendants were entitled to qualified immunity for preventing plaintiff from praying demonstrably in the prison's recreation yard).

However, Plaintiff is also correct that his situation is not analogous to previous cases in which prisoners challenged DOCCS's policy regarding demonstrable prayer in the recreation yard. Dismiss Opp'n at 6–8. Most importantly, between March 24, 2016 and August 23, 2017, Cayuga officials permitted Smith to pray demonstrably in the recreation yard and yet denied Plaintiff the ability to do so. This inconsistent treatment should have raised significant concerns among prison officials regarding the alleged

penological interests supporting the policy of banning individual, demonstrable prayer. See Smith v. Artus, No. 07-CV-1150, 2010 WL 3910086, at *29 (N.D.N.Y. Sept. 30, 2010) ("Smith I") ("The defendants in this case allege that there are concerns for security, as well as staffing and fiscal concerns, associated with accommodating plaintiff's request to pray demonstratively during the recreation period."), vacated on other grounds, 522 Fed.Appx. 82 (2d Cir. 2013). If Smith could pray demonstrably in the recreation yard, why couldn't Plaintiff? What legitimate penological interests did banning Plaintiff (and other inmates) from praying demonstrably in the recreation yard serve? State Defendants make no attempt to justify this inconsistent treatment between Smith and the other inmates.

As discussed more fully below, to defend against a First Amendment free exercise claim brought by a prisoner, prison officials bear the "relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." Salahuddin v. Goord, 467 F.3d 263, 275 (2d Cir. 2006). Courts in this Circuit have highlighted the problem that inconsistent treatment of inmates creates for prison officials in their attempt to justify burdens on prisoners' religious exercise. See, e.g., Aziz v. Le Fevre, 642 F.2d 1109, 1111 (2d Cir. 1981) ("We think it would have some bearing upon the ultimate resolution of the constitutional question if, in fact, the state policy as set forth in Directive No. 4203 is not followed at Green Haven, and hence is not a 'policy' at all."); Pilgrim v. Artus, No. 07-CV-1001, 2010 WL 3724883, at *11 (N.D.N.Y. Mar. 18, 2010), adopted by, 2010 WL 3724881 (N.D.N.Y. Sept. 17, 2010) ("Despite the alleged security concerns, DOCS' policy allows inmates of the Rastafarian faith to wear dreadlocks. Also, Directive #4914 allows all inmates to grow their hair long, provided they wear it pulled back in a ponytail, and also allows inmates to wear their hair in a 'Afro-natural' style. Thus, DOCS affords a degree of leeway with respect to inmates' hairstyles, but has drawn a line in the sand with respect to dreadlocks worn by non-Rastafarian prisoners."); Salahuddin v. Coughlin, 999 F. Supp. 526, 536 (S.D.N.Y. 1998) (describing inconsistent application of DOCCS policy toward congregate religious services in multiple prisons, which "creates an issue of fact as to ... the legitimacy of the penalogical [sic] interest asserted").

**\*6** At this early stage in the litigation and absent any attempt from State Defendants to justify the inconsistent

treatment of Smith and Plaintiff, the Court cannot hold that a reasonable prison official would have understood such treatment to be consistent with the First Amendment. If Cayuga officials had no penological interest in denying Smith the ability to pray demonstrably in the outdoor yard during recreation, then there may have been no penological interest in denying Plaintiff the same ability. Moreover, it was clearly established law in 2016 that prison officials needed *some* legitimate penological interest to justify the burdening of an inmate's sincere religious beliefs. See Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003) ("We find that prior cases make it sufficiently clear that absent a legitimate penological justification, which for present purposes we must assume defendants were without, prison officials' conduct in denying Ford a feast imbued with religious import was unlawful."). Therefore, at this time, State Defendants are not entitled to qualified immunity regarding Plaintiff's First Amendment Claim.

### b. RLUIPA Claim

Plaintiff may not recover money damages pursuant to RLUIPA against State Defendants either in their individual or official capacities. Smith II, 2015 WL 9413128, at *12 ("RLUIPA does not authorize claims for money damages against state officials in their official capacities and does not create a private right of action against them in their individual capacities." (citing Sossamon v. Texas, 563 U.S. 277, 280 (2011))). However, the doctrine of qualified immunity does not preclude Plaintiff from receiving injunctive relief against State Defendants in their official capacities pursuant to RLUIPA. Id. at *12–13.

### c. Equal Protection Claim

State Defendants do not make any specific arguments in support of their position that they are entitled to qualified immunity regarding Plaintiff's Equal Protection claim. Dismiss Mot. at 4–5. The constitutional questions raised by DOCCS's unequal treatment of Plaintiff and his fellow prisoner, Artus Smith, are distinct from the constitutional questions surrounding Plaintiff's alleged right to pray in the recreation yard pursuant to the First Amendment. Since qualified immunity is an affirmative defense, and, as such, defendants bear the burden of

proving that the privilege of qualified immunity applies, Coolick, 699 F.3d at 219, the Court will not dismiss Plaintiff's Equal Protection claim for monetary damages absent an argument from State Defendants.

### 2. Personal Involvement

State Defendants also move to dismiss Plaintiff's claims based on the requirement that "a plaintiff must show some 'tangible connection' between the unlawful conduct and the defendant[s]." Dismiss Mot. at 5 (quoting Jackson v. Gunsalus, No. 16-CV-647, 2016 WL 4004612, at *3 (N.D.N.Y. June 24, 2016), adopted by 2016 WL 3983635 (N.D.N.Y. July 25, 2016)). "It is well settled in this circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" is insufficient to show his or her personal involvement in that unlawful conduct. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003); accord Wright, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" only if they: (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) were grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986)). [7]

[7] There is disagreement among district courts in this Circuit as to whether all of the Colon factors are still valid following the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009). See, e.g., Dilworth v. Goldberg, No. 10-CV-2224, 2011 WL 3501869 at *17 (S.D.N.Y. Jul. 28, 2011) (collecting cases), adopted by 2011 WL 4526555 (Sept. 30, 2011). "[I]n the absence of contrary direction from the

Second Circuit, the Court will continue to apply those factors." Jackson v. Goord, No. 06-CV-6172, 2011 WL 4829850, at *9 (W.D.N.Y. Oct. 12, 2011).

**\*7** However, "the 'personal involvement requirement does *not* apply to bar actions ... for injunctive relief against a state official.'" Brisco v. Rice, No. 11-CV-578, 2012 WL 253874, at *4 (E.D.N.Y. Jan. 27, 2012) (quoting Marinaccio v. Boardman, No. 02-CV-831, 2005 WL 928631, at *9–10 (N.D.N.Y. Apr. 19, 2005) (emphasis in original)); see also Courts v. Coombe, No. 95-CV-2350, 1996 WL 312357, at *2 (S.D.N.Y. June 11, 1996) ("Personal involvement ... is only required where the complaint seeks monetary damages, not where injunctive or declaratory relief is sought."). Instead, in order to state a claim seeking injunctive relief, a plaintiff must demonstrate that the defendant "has a direct connection to, or responsibility for, the alleged illegal action." Reynolds v. Blumenthal, No. 04-CV-218, 2006 WL 2788380, at *7 (D. Conn. Sept. 26, 2006) (citing Ex parte Young, 209 U.S. 123, 157 (1908)); see also Pugh v. Goord, 571 F. Supp. 2d 477, 517 (S.D.N.Y. 2008) ("Courts in this Circuit have since applied the holding in Ex parte Young to require only that a defendant have a 'connection' with the act, and not more.") (citing In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 372–73 (2d Cir. 2005)).

### a. David Stallone

Superintendent Stallone is a supervisory official at Cayuga, and therefore Plaintiff must allege his personal involvement pursuant to Colon with respect to Plaintiff's First Amendment and Equal Protection claims for monetary damages. Plaintiff alleges that Stallone told Smith that any Muslim inmate who wishes to pray demonstrably in the recreation yard "would have to file suits [*sic*] in order to get similar accommodation." Compl. at 6. Plaintiff also presents evidence that Stallone denied an inmate grievance appeal, similar to the one filed by Plaintiff, and stated that only Smith is permitted to pray demonstrably in the recreation yard. Dkt. No. 1-1, Ex. 4. Stallone did not deny Plaintiff's grievance appeal; a designee did. Dkt. No. 1-1, Ex. 8.

Courts in this Circuit are split regarding the extent of involvement that a plaintiff must allege in order to establish a supervisory defendant's requisite personal involvement. Compare McClenton v. Menifee, No. 05-

CV-2844, 2006 WL 2474872, at *10 (S.D.N.Y. Aug. 22, 2006) ("[A] supervisor's mere denial of a grievance is insufficient to establish personal involvement ..."), with Madison v. Mazzuca, No. 02-CV-10299, 2004 WL 3037730, at *10 (S.D.N.Y. Dec. 30, 2004) ("[P]ersonal involvement is present where a supervisory official reviews a prisoner's grievance with respect to a constitutional violation and decides against taking any corrective action."). With regard to Stallone, the Court does not need to take sides in this split, because Plaintiff has alleged that Stallone—outside of the context of grievances—was aware of the alleged violation of Plaintiff's rights, had the authority to remedy such violation, and failed to do so. At this early stage in the litigation, such allegations are sufficient to establish personal involvement under the second prong of Colon. See Saxon v. Attica Med. Dep't, 468 F. Supp. 2d 480, 483 (W.D.N.Y. 2007) (denying a motion to dismiss claims against prison superintendent, even though "allegations ... may be characterized as thin").

With regard to Plaintiff's motion for prospective injunctive relief, Stallone—as the superintendent of Cayuga—has a direct connection to, and is responsible for, the protection of Plaintiff's constitutional and statutory rights. E.g., Jacobson v. Coughlin, 523 F. Supp. 1247, 1249 (N.D.N.Y. 1981) (denying a motion to dismiss claims for injunctive relief against prison superintendent regarding plaintiff's special housing confinement). Plaintiff also has specifically alleged that Stallone was aware of and failed to remedy the alleged constitutional and statutory violations at issue in this case. Therefore, Plaintiff's claims against him for injunctive relief will not be dismissed.

### b. Other State Defendants

**\*8** Plaintiff presents evidence that the other State Defendants—Hale, Schadewald, Korb, Figueroa, Noeth, Perkins, Haggerty, Coleman, and Infantino—were members of either the IGRC or CORC and denied multiple grievances and appeals regarding inmates' ability to pray demonstrably in Cayuga's yard during recreation. Dkt. No. 1-1, Exs. 2–7. Although, as mentioned above, district courts in this Circuit are split regarding the level of involvement represented by a denial of an inmate grievance, the majority of courts have held "that an officer tasked only with reviewing an administrative determination is not 'personally involved' even if the underlying determination implicates a plaintiff's constitutional rights." Vogelfang v. Capra, 889 F. Supp. 2d 489, 503–04 (S.D.N.Y. 2012) (citing Odom v. Calero, No. 06-CV-15527, 2008 WL 2735868, at *7 (S.D.N.Y. July 10, 2008)); see also Rogers v. Artus, No. 13-CV-21, 2013 WL 5175570 at * 3 (W.D.N.Y. Sept. 11, 2013) ("The denial, or affirmance of a denial, of a grievance by a Superintendent or other supervisory official is insufficient, without more, to create personal involvement in alleged violations." (citing Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) and James v. Poole, No. 06-CV-6007, 2013 WL 132492 at *7 (W.D.N.Y. Jan. 9, 2013))). In addition, Plaintiff has not alleged that any of these defendants are ultimately responsible for the protection of Plaintiff's constitutional and statutory rights, as defendant Stallone is. Therefore, defendants Hale, Schadewald, Korb, Figueroa, Noeth, Perkins, Haggerty, Coleman, and Infantino must be dismissed. [8]

[8]    This analysis also applies to defendant Joseph Noeth, who was a member of CORC but was not properly served the Complaint because of a typographical error. Dkt. No. 53. In addition, the three named defendants who are inmates—David Jackson, Willie Brown, Jr., and Todd Gage—must be dismissed because they are not state actors. Lewis v. Doe, No. 13-CV-3190, 2013 WL 5923723, at *1 (E.D.N.Y. Oct. 31, 2013).

### B. Preliminary Injunction

Plaintiff seeks injunctive relief with regard to two activities: First, to pray demonstrably in the recreation yard on his own, and, second, to pray demonstrably in the recreation yard in a group of two or three inmates. Prelim. Inj. Mot. at 1. Plaintiff seeks this relief for himself and "similarly situated Muslim prisoners in custody of [ ] DOCCS." Id. However, as a pro se litigant, Plaintiff "has no authority to appear as an attorney for others." Lebron v. Armstrong, 289 F. Supp. 56, 59 (D. Conn. 2003) (citing Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991)). Plaintiff "may seek relief on behalf of himself only." Id. Therefore, his request for relief with respect to other inmates is denied.

### 1. Individual, Demonstrable Prayer in the Recreation Yard

### a. Mootness

State Defendants argue that Plaintiff's request for injunctive relief is moot, and therefore the Preliminary Injunction Motion should be denied, because Plaintiff is now able to pray demonstrably in Cayuga's recreation yard. Prelim. Inj. Opp'n at 1. However, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.' " Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)). Instead, a defendant must meet the "heavy burden of persua[ding]" the Court that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (quoting United States v. Concentrated Phosphate Exp. Assn., 393 U.S. 199, 203 (1968)).

Here, State Defendants have not met this burden. They do not deny that Plaintiff is able to pray demonstrably only because he filed suit in federal court; there is no indication that, absent this litigation, Cayuga officials would have altered its previous policy. Moreover, State Defendants have not made any indication that DOCCS has reconsidered its "departmental directive prohibiting demonstrative prayer in the [recreation] yard." Dismiss Mot. at 4. In short, State Defendants have not demonstrated that it is absolutely clear that Plaintiff will not be denied the ability to pray demonstrably in Cayuga's yard during recreation in the future. Accordingly, Plaintiff's request for relief is not moot.

### b. Likelihood of Success on the Merits

**\*9** In determining whether Plaintiff has established a likelihood of success on the merits, the Court looks to whether the evidence presented demonstrates that he is likely to prevail at trial on a claim concerning the conduct complained of—in this case, the denial of his ability to pray demonstrably on his own in Cayuga's recreation yard. To succeed on a First Amendment free exercise claim, "the prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin, 467 F.3d at 274–75. Defendants then bear the "relatively limited burden of

identifying the legitimate penological interests that justify the impinging conduct." Id. at 275.

Although State Defendants have not presented an argument on the merits in opposition to the Preliminary Injunction Motion, it is improbable that they would question the sincerity of his religious belief or the fact that the denial of his ability to pray demonstrably in the recreation yard substantially burdens those beliefs. Judge Mordue denied DOCCS's motion for summary judgment advancing such arguments with regard to Smith in 2015. See Smith II, 2015 WL 9413128 at *9 ("The Court rejects defendants' argument that they are entitled to summary judgment dismissing plaintiff's free exercise claim on the ground that the challenged policy does not impose a substantial burden on his sincerely held religious beliefs as a matter of law."). It is also improbable that State Defendants would present an argument that Plaintiff's ability to pray demonstrably threatens legitimate penological interests, since Cayuga now permits Plaintiff—and apparently all other Muslim inmates—to pray demonstrably in the yard during recreation. Status Report at 1.

In sum, Plaintiff is likely to succeed at trial on his claim that denying him the ability to pray demonstrably in the recreation yard at Cayuga violates his First Amendment rights.

### c. Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury." Elrod v. Burns, 427 U.S. 347 (1976). Because Plaintiff alleges that the deprivation of his First Amendment right to the free exercise of religion resulted directly from prison officials' actions, "irreparable harm may be presumed." Keesh v. Smith, No. 04-CV-779, 2006 WL 516793 at *3 (N.D.N.Y. Mar. 2, 2006).

### d. Balance of the Equities

In determining whether the balance of equities tips in Plaintiff's favor, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24 (quoting Amoco Prod. Co.

v. Village of Gambell, 480 U.S. 531, 542 (1987)). Here, the hardship faced by Plaintiff is potentially substantial: the loss of his right to exercise his religious beliefs. On the other side, the hardship faced by State Defendants is minimal, since Cayuga now permits Plaintiff to pray demonstrably in its recreation yard. State Defendants make no argument that maintaining this new policy during the course of litigation would impose a hardship on prison administration.

### e. Public Interest

Finally, the Court finds that the issuance of the requested relief serves the public interest. While the Court generally assumes that the acts of a governmental entity are aligned with the interests of the public it serves, N.Y. Progress & Prot. PAC v. Walsh, 733 F.3d 483, 488 (2d Cir. 2013), that is not the case here. "[S]ecuring First Amendment rights is in the public interest," and it is decidedly against the public interest to permit the enforcement of an unconstitutional policy or law. Id.

 *10 Since Plaintiff has established each of the factors required by Winter, the Court will issue a preliminary injunction with regard to individual, demonstrable prayer in Cayuga's outdoor yard during recreation.

### 2. Congregate, Demonstrable Prayer in the Recreation Yard

Plaintiff's request for injunctive relief regarding his ability to pray in congregate with other inmates is factually distinct from his request for individual prayer. State Defendants have not permitted Plaintiff or other inmates to pray in congregate, and State Defendants maintain that congregate prayer would present serious security threats to prison administration. See Dkt. No. 31-1 ("Kelly Declaration") ¶¶ 20–30. Plaintiff is correct to highlight the apparent contradictions in some of these alleged security threats. E.g., Prelim. Inj. Mot. Reply ¶¶ 36–37. For example, State Defendants do not sufficiently explain why groups of two or three inmates are permitted to gather in the recreation yard for conversation but are not allowed to gather for demonstrable prayer. The fact that Muslims' demonstrable prayer could be "used as code," Kelly Decl. ¶ 25, does not explain why such prayer is different from other activities, such as normal

conversation or hand gestures, that may contain "codes" but which are permitted in the recreation yard among two or three inmates.

But at this early stage in the litigation, the Court cannot find that Plaintiff is likely to succeed on the merits regarding this claim. Courts in this Circuit have upheld prison officials' consistent application of bans on congregate, demonstrable prayer under factually similar circumstances. See, e.g., Withrow v. Bartlett, 15 F. Supp. 2d 292, 296 (W.D.N.Y. 1998) ("I find that defendants had a legitimate penological interest in maintaining security, and that this interest was rationally related to their enforcement of policies that prohibit group demonstrative prayer in Elmira's recreational yard."). Moreover, given the direction from Congress that, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution," Fisher, 981 F. Supp. at 167, the Court will not alter the status quo at Cayuga at this point. Accordingly, Plaintiff's request for injunctive relief with respect to congregate, demonstrable prayer is denied.

### C. Motion to Appoint Counsel

As discussed above, Plaintiff's claims are clearly "of substance." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986). The heart of Plaintiff's lawsuit— whether prisoners have a First Amendment right to pray demonstrably in an outdoor yard during recreation— has perplexed courts in this Circuit since the late 1970s. E.g., Aziz, 642 F.2d at 1111. The large number of similar lawsuits that have ended before the merits were reached strongly suggests that the legal issues are complicated and Plaintiff would benefit from legal representation. In addition, litigating this lawsuit properly will benefit from extensive factfinding, particularly with regard to the practices at other prison facilities in New York. Since Plaintiff has been unable to receive legal representation on his own, Counsel Mot. at 1, the Court grants Plaintiff's Counsel Motion and pro bono counsel will be appointed.

### V. CONCLUSION
 *11 Accordingly, it is hereby:

ORDERED, that Defendants' Motion (Dkt. No. 38) is GRANTED in part and DENIED in part; the Motion is GRANTED as to Plaintiff's claim for monetary damages

pursuant to RLUIPA against all Defendants; the Motion is **GRANTED** as to all of Plaintiff's claims against defendants Jeffrey Hale, T. Schadewald, E. Korb, Daniel Figueroa, Ora Perkins, David Haggerty, Mary Coleman, and David Infantino; the Motion is otherwise **DENIED**; and it is further

**ORDERED**, that Jeffrey Hale, T. Schadewald, E. Korb, Daniel Figueroa, Ora Perkins, David Haggerty, Mary Coleman, David Infantino, Joseph Noeth, David Jackson, Willie Brown, Jr., and Todd Gage are **DISMISSED** as defendants in this action; and it is further

**ORDERED**, that Plaintiff's Preliminary Injunction Motion (Dkt. No. 9) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that each time Plaintiff is permitted to attend recreation in Cayuga's outdoor yard, Plaintiff shall be permitted to participate in individual, demonstrable

prayer absent extraordinary circumstances; and it is further

**ORDERED**, that Plaintiff's Counsel Motion (Dkt. No. 46) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court is instructed to appoint Lisa Anne Proskin, whose business address is 423 Loudon Road, Albany, New York, 12211, to serve as *pro bono* counsel and to faithfully and diligently represent Plaintiff in this case; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2018 WL 671256

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 1295178
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Merim Berisha, Plaintiff,
v.
Sergeant Farrell, Defendant.

9:13-CV-1191 (LEK/ATB)
|
Signed 03/08/2016

**Attorneys and Law Firms**

MERIM BERISHA, Plaintiff, pro se.

JOSHUA L. FARRELL, Ass't Att'y Gen., for the Defendants.

### REPORT-RECOMMENDATION

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

**\*1** This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge. In his amended civil rights complaint, plaintiff, a practicing Muslim, alleges that his right to the free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Person Act ("RLUIPA") was violated when defendant ordered him on two consecutive days to shave his beard or face disciplinary sanctions. (Dkt. No. 11, Am. Compl.). Plaintiff's amended complaint also raised due process, equal protection and retaliation claims that were dismissed by Judge Kahn on December 11, 2014. [1] (Dkt. No. 12).

[1] In addition, defendants Brian Fischer and Anthony Annucci were dismissed as defendants due to a lack of personal involvement. (Dkt. No. 12, at 3).

Presently before this court is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. (Dkt. No. 19). Plaintiff has responded in opposition to the motion. (Dkt. No. 23). Defendant submitted a reply, to which plaintiff also responded. (Dkt. Nos. 24, 25). For the following reasons, this court agrees with defendants and will recommend dismissal of the amended complaint.

### I. *Summary Judgment*

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord,* 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Salahuddin v. Goord,* 467 F.3d at 272.

### II. *Facts*

The relevant facts in this case were outlined in Judge Kahn's December 11, 2013 Decision and Order (Dkt. No. 12) and will be recited herein for clarity and continuity, with additional details drawn from the exhibits submitted by the parties in connection with this motion. This court will cite to additional details from the parties' motion papers as necessary in its analysis of defendant's summary judgment motion.

**\*2** Plaintiff is an inmate incarcerated at Greene Correctional Facility in Coxsackie, New York ("Greene"). (Am. Compl. at 1). Plaintiff alleges that on September 16, 2013, at approximately 4:30 p.m., he was in the Greene mess hall when defendant pulled him aside

to ask if plaintiff had a permit for his beard. (Am. Compl. at 4). Plaintiff responded that he did not, but told Farrell that he was a practicing Muslim who was prohibited from trimming his beard by the Qu'ran. *Id.* Although plaintiff had recently transferred to Greene from another New York State Department of Corrections and Community Supervision ("DOCCS") facility, he was unaware of the DOCCS directive requiring a beard permit for facial hair in excess of one inch. (Dkt. No. 19–3, Joshua L. Farrell Decl. Ex. 1, Transcript of Pl.'s April 24, 2015 deposition ("Dep.") at 13). Plaintiff alleges that defendant then gave him a direct order to cut his beard off and said that he would come to plaintiff's dormitory to see that he complied. *Id.* Plaintiff returned to his dormitory, but did not have access to a beard trimmer. (Dep. at 14). Plaintiff packed his belongings, believing that he was going to be sent to the Special Housing Unit ("SHU"). (*Id.*). At his deposition, plaintiff testified that following this first encounter with defendant, "I wasn't even going to cut my beard. That's honest, I wasn't going to cut my beard. I didn't care." (*Id.*). Defendant never came to check on plaintiff. (*Id.*).

On September 17, 2013, plaintiff informed the Offender Rehabilitation Counselor, Mr. Dobbs ("Dobbs"), and the Superintendent, Mr. Smith ("Smith"), of the prior day's encounter with defendant. [2] (Am. Compl. at 4–5). Smith confirmed that plaintiff was registered in the DOCCS system as a practicing Muslim, and told plaintiff that there would be a temporary hold on cutting his beard. (Dep. at 14). Smith also had plaintiff submit a written request for a DOCCS beard permit, pursuant to the available religious exemption. (Am. Compl. at 5, Dep. at 14–15). Plaintiff asked Smith what he should do if he was stopped or harassed by defendant about his beard. (Dep. at 15). Smith told plaintiff to mention his discussion with the superintendent and advise defendant that he had a temporary hold on shaving. (Am. Compl. at 5; Dep. at 15).

[2]     Neither Dobbs or Smith were named as defendants in this action.

During evening meal service on September 17, 2013, defendant asked plaintiff why he had not shaved his beard, despite his direct order to do so. (Am. Compl. at 5; Dep. at 15). When plaintiff told defendant about the discussion with Smith and the temporary hold on shaving, defendant "went into a rampage" and told plaintiff that he had to comply with defendant's direct order. (Dep. at 15).

Defendant did not threaten any physical violence, but based on defendant's statements, plaintiff believed that he would be sent to "the box," or SHU, if he did not comply. [3] (Dep. at 17). Plaintiff returned to his dorm, obtained a beard trimmer, and shaved his beard. (Am. Compl. at 5; Dep. at 15). Plaintiff claims that he shaved his beard [4] out of fear, and that he would not have done so otherwise, because plaintiff considered the Islamic prohibition on shaving his beard to be a serious religious commitment. (Am. Compl. at 5).

[3]     During his deposition, plaintiff could not recall if the threat of being taken to SHU occurred during his first or second encounter with defendant. (Dep. at 16).

[4]     The record is unclear whether plaintiff shaved off his beard completely, or only trimmed it to comply with the one inch limit. (Am. Compl. at 5; Dkt. No. 23, Ex. D to Pl.'s Mem. of Law). Given plaintiff's belief that any alteration of his beard would violate his religious commitment, this ambiguity does not impact the constitutional analysis.

On September 18, 2013, plaintiff filed a grievance alleging that defendant ordered him to shave his beard, in conflict with plaintiff's Muslim faith. (Am. Compl. at 4). The grievance was accepted in part, although the Superintendent concluded that plaintiff had not advised defendant that he applied for an exemption to the grooming policy. (Dkt. No. 23, Ex. D to Pl.'s Mem. of Law). To prevent similar issues from arising in the future, plaintiff was advised to speak to the facility Imam regarding his beard permit, and the DOCCS grooming directive was read at a subsequent security staff line up to address any misunderstandings regarding its implementation. (*Id.*).

**\*3** On October 25, 2013, DOCCS Assistant Counsel Leslie H. Becher advised plaintiff by letter that she had reviewed his request for a beard permit, and would be recommending that a permit be issued granting him a religious exemption from the one-inch beard rule. (Dkt. No. 23, Ex. A to Pl.'s Memo. of Law). DOCCS records show that the beard permit was formally issued on November 4, 2013. (Dkt. No. 19–4, Ex. 2 to Joshua L. Farrell Decl.).

### III. *Compliance with Local Rule ("L.R.") 7.1*

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

As required under L.R. 7.1, defendants have filed a Statement of Material Facts. (Dkt. 19–1.) Plaintiff failed to initially respond to the Statement of Material Facts, but he filed a sur-reply stating that "[t]he facts on record are not in dispute, plaintiff agreeds [sic] with defendant about the 'Material Facts' that plaintiff was not physically harmed as stated on the record." (Dkt. No. 25, ¶ 3). This response does not comply with the requirements of L.R. 7.1(a)(3). Under this rule, the opposing party's response to the movant's statement of material facts "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." Defendant provided plaintiff with notice of L.R. 7.1 and the consequences of non-compliance as part of his summary judgment motion. (Dkt. No. 19, at 3).

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the L.R. provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) (citation and internal quotation marks omitted). In deference to plaintiff's pro se status and his attempt, albeit inadequate, to respond to defendant's statement of material facts, the court has opted to review the entire summary judgment record.

## IV. *Free Exercise of Religion*

### A. Legal Standards

The First Amendment guarantees the right to the free exercise of religion. *Cutter v. Wilkinson,* 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford*

*v. McGinnis,* 352 F.3d 582, 588 (2d Cir.2003) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)). However, the right "is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Johnson v. Guiffere,* No. 04–CV–57, 2007 WL 3046703, at *4 (N.D.N.Y.Oct.17, 2007).

To succeed on a claim under the Free Exercise Clause, the plaintiff must show at the threshold, that the challenged conduct "substantially burdens his sincerely held religious beliefs." *Pugh v. Goord,* 571 F.Supp.2d 477, 497 (S.D.N.Y.2008) (quoting *Salahuddin,* 467 F.3d at 274–75) (citing *Ford,* 352 F.3d at 591). The issue of whether a "substantial burden" is required has been discussed at length, and although not specifically decided, recent cases still apply the requirement to Free Exercise cases. *Holland v. Goord,* 758 F.3d 215, 220–23 (2d Cir.2014); *Walker v. Artus,* No. 9:10–CV–1431(MAD/DEP), 2013 WL 564909, at *8–9 (N.D.N.Y. Sept. 30, 2013) (citing *Salahuddin,* 467 F.3d at 274–75). This court will follow the analysis in *Holland* and will consider the First Amendment claim, assuming that the substantial burden test is still valid.

**\*4** The Religious Land Use and Institutionalized Persons Act ("RLUIPA") also protects inmates' religious rights. RLUIPA prohibits the government from imposing a substantial burden on a prisoner's religious exercise unless the burden is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000cc-1(a). For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith. In addition, this interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine. *Pugh v. Goord,* 571 F.Supp.2d 477, 504–05 (S.D.N.Y.2008); *Graham v. Mahmood,* No. 05–10071, 2008 WL 1849167, at *14 (S.D.N.Y. Apr. 22, 2008); *Gill v. Defrank,* No. 98 Civ. 7851, 2000 WL 897512, at *1 (S.D.N.Y. July 6, 2000) (citing *Boomer v. Irvin,* 963 F.Supp.2d 227, 230 (W.D.N.Y.1997)).

### B. Application

#### 1. RLUIPA Claim

Plaintiff's amended complaint, which seeks only monetary damages, [5] asserts a RLUIPA claim. (Am. Compl. at 10). It is well-established that monetary damages are not available against state actors in their official capacities for a violation of RLUIPA. *Sossamon v. Texas,* 563 U.S. 277, 293 (2011). In addition, the Second Circuit has held that "RLUIPA does not provide a cause of action against state officials in their individual capacities." *Washington v. Gonyea,* 731 F.3d 143, 145 (2d Cir.2013). Because his damage claim is precluded, this court recommends that plaintiff's RLUIPA claim be dismissed.

[5]   Injunctive relief is unnecessary because plaintiff now has a beard permit allowing him to have facial hair in excess of one inch. (Dkt No. 19–4, Ex. 2 to Joshua L. Farrell Decl.; Dep. at 32).

## 2. First Amendment Claim

Beard grooming standards for all inmates at DOCCS facilities, including Greene, are established by DOCCS Directive 4914(B)(1)(b). Both parties have submitted a copy of this directive in connection with this motion. (Dkt. No. 19–6, Ex. 1 to Mark Farrell Decl.; Dkt. No. 23, Ex. C to Pl.'s Mem. of Law). The directive provides in pertinent part that:

An inmate may grow a beard and/or mustache, but beard/mustache hair may not exceed one (1) inch in length unless:

a.  The inmate has a Court Order restraining the Department from enforcement; or

b.  The inmate has requested and received an exemption based upon his or her documented membership in a religion which has an established tenet against the trimming of beards including, but not limited to, inmates who are Rastafarian, Orthodox Jew, or Muslim. All inmate requests for such exemption shall be referred to and reviewed by Counsel's Office after consultation with the facility Chaplain. After such review, Counsel's Office will make a recommendation to the Deputy Commissioner for Correctional Facilities. If the request is approved by the Deputy Commissioner for Correctional Facilities, a permit will be issued to the inmate.

Further, pending Counsel's Office's determination of requests for exemption from the one (1) inch rule, inmates shall not be required to cut or trim their beards, disciplined for refusing the order to shave, or subject to repeat orders to shave.

An inmate who refuses to comply with this rule will be given 14 days from the date of the written order to shave in which to request an exemption. If the inmate fails to submit a request for an exemption within 14 days, he may be disciplined for refusal to obey such order.

Plaintiff does not allege that the grooming policy itself violates his right to free exercise of religion – an argument that has been considered and rejected in other cases. *See Fromer v. Scully,* 874 F.2d 69, 75–76 (2d Cir.1989) (rejecting First Amendment challenge to one inch beard rule); *Young v. Goord,* No. 1–CV–626, 2005 WL 562756, at *8 (E.D.N.Y. 2005), *aff'd* 192 Fed. App'x 31 (2d Cir. 2006) (rejecting RLUIPA challenge to one inch beard rule); *Verdal v. Frantz,* No. 9:01–CV–910, 2002 WL 31309175, at *3 (dismissing First Amendment challenge to separate DOCCS requirement that new inmates shave upon their arrival to prison); *see also Holt v. Hobbs,* ___ U.S. ___, 135 S.Ct. 853, 868 (2015) (Sotomoyer, J., concurring) (describing New York DOCCS inmate grooming policy as "more permissive" than the complete ban on inmate facial hair that the Supreme Court unanimously found to violate RLUIPA). Instead, plaintiff argues that defendant failed to follow the established DOCCS policy that allows fourteen days for an inmate to submit an exemption request before any disciplinary action is taken. (Am. Compl. at 8). As plaintiff characterized his complaint at his deposition, defendant "just jumped the gun" and ordered plaintiff to immediately shave or trim his beard. (Dep. 28).

**\*5**  Courts generally do not question the centrality of particular beliefs or practices to a faith, or the validity of a litigant's interpretation of those creeds. *Amaker v. Goord,* No. 06–CV–490A, 2010 WL 2595286, at *11 (W.D.N.Y. Mar. 25, 2010). The Supreme Court has rejected the notion that to claim the protection of the free exercise clause, the plaintiff must be "responding to the commands of a particular religious organization." *Frazee v. Ill. Dep't of Employment Sec.,* 489 U.S. 829, 834 (1989). Courts may, however, consider whether an inmate sincerely holds a particular belief and whether the belief is religious in nature. *Id.* (citing *Ford,* 352 F.3d at 590).

Plaintiff has demonstrated that DOCCS recognizes him as a practicing Muslim. (Dkt. No. 23, Ex. B to Pl.'s Mem. of Law). In addition, defendant's motion for summary judgment has not challenged the sincerity of plaintiff's belief that his religion forbids him from shaving or trimming his beard, and this court finds no reason to question it. *See Holt,* ___ U.S. ___, 135 S.Ct. at 862–63 (2015) (noting that the belief that men must grow beards is widely followed by observant Muslims across the various schools of Islam).

However, even viewing all facts in the light most favorable to the non-moving party, plaintiff has not demonstrated that defendant's actions on September 16–17, 2013 imposed a substantial burden upon plaintiff's religious exercise.[6] A substantial burden on religious expression is one that " 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Guillory v. Weber,* No. 9:12–CV–280 (LEK/RFT), 2015 WL 1419088, *8 (N.D.N.Y. April 6, 2015) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.,* 450 U.S. 707, 717–18 (1981)). Plaintiff's encounters with defendant in the mess hall do not rise to that level. On September 16, 2016, defendant accurately told plaintiff that his beard was in violation of DOCCS policy. (Am. Compl. at 4). Plaintiff admitted that he chose to ignore defendant's September 16, 2013 order to shave, and faced no repercussions. (Dep. at 14). Instead, plaintiff spoke to Dodd and Smith, who advised him that no disciplinary action could take place for at least fourteen days, and helped plaintiff submit an application for a beard permit. (Am. Compl. at 4–5; Dep. at 14–15). At the time, plaintiff did not express any doubts about the validity of the fourteen day "temporary hold" on shaving, and only asked Smith how to respond if defendant stopped him again. (Dep. at 15).

[6] Even if injunctive relief were available, dismissal of plaintiff's RLUIPA cause of action would still be warranted because substantial burden is a necessary element of a claim under that statute.

The next day, September 17, 2013, defendant again challenged plaintiff about the length of his beard. Plaintiff followed Smith's instructions and advised defendant of his application for a beard permit and the resulting temporary hold. (Am. Compl. at 5; Dep. at 15). Even if, as plaintiff contends, defendant "went into a rampage" and used threats and abusive language toward him, plaintiff knew that any disciplinary action related to his beard would

be delayed by the terms of Directive 4914. (Dkt. No. 19–6, Ex. 1 to Mark Farrell Decl.; Dkt. No. 23, Ex. C to Pl.'s Mem. of Law). Moreover, although plaintiff alleged that defendant threatened to take him to SHU, defendant did not issue any disciplinary ticket to plaintiff. (Dkt. No. 19–1, Statement of Material Facts, ¶ 11). Defendant did not make any physical contact, threaten to physically harm plaintiff or attempt to shave plaintiff himself. (Dep. at 16, 28, 31). Besides the two encounters in the mess hall, plaintiff does not allege any further contact with defendant.

**\*6** Defendant's behavior, while clearly frustrating to plaintiff, does not give rise to a constitutional claim. *See Mack v. Griffin,* No. 9:04–CV–588 (NAM/RFT), 2006 WL 2792736, *7 (N.D.N.Y. Sept. 27, 2006) (granting summary judgment where Muslim inmate alleged that he had been threatened with SHU if he did not comply with DOCCS beard policy); *see also Hamilton v. Erhardt,* No. 10–CV–6234, 2011 WL 3476475, at *2–5 (W.D.N.Y. Aug. 9, 2011) (dismissing claims under Fed.R.Civ.P. 12(b)(6) that defendants ordered inmates to shave his beard while mocking and harassing him, but allowing claim that defendants had later threatened physical harm and punished plaintiff). Plaintiff, who had been advised by Superintendent Smith that no disciplinary action was imminent, never faced a "forced choice" to decide between the "equally unpleasant alternatives" of disciplinary sanctions and abandonment of his religious beliefs. *See Smith,* No. 9:07–CV–1150 (NAM/ATB), 2010 WL 3910086, at *17. As the facts of this case demonstrate, plaintiff had other options that presented a high likelihood of success and would not have impacted his religious beliefs, such as further discussion with Dobbs and Smith or the filing of an administrative grievance.

In addition, plaintiff's encounters with defendant qualify as the type of isolated incident, promptly corrected by the facility, that courts have typically treated as a *de minimis* burden on religious expression. *See, e.g., Williams v. Rock,* 2014 WL 4685035 (N.D.N.Y. Sept. 19, 2014) (staff failure to deliver meals at appropriate time during Ramadan was *de minimis* burden on First Amendment rights); *Smith v. Graziano,* No. 9:08–CV–469 (GLS/RFT), 2010 WL 1330019, at *9 (N.D.N.Y. March 16, 2010) (cancellation of two religious services, that was the result of a "breakdown of communication between prison officials and security staff," constituted a *de minimis* burden on inmate's ability to freely exercise

his religion); *Allan v. Woods,* No. 9:05–CV–1280 (NAM/GJD), 2008 WL 724240, at \*4–5 (N.D.N.Y. Mar. 17, 2008) (finding that there was no substantial burden where inmate was assigned to work detail on Sabbath one time before officials approved religious accommodation). Prison officials promptly assisted plaintiff with his application for a beard permit after his first encounter with defendant. Responsive measures were also taken after plaintiff filed a grievance related to the second encounter, and plaintiff now has a valid beard permit recognizing his religious exemption.

Based on the record in this case, this court concludes that defendant's actions did not substantially burden plaintiff's ability to practice his religion. Even though plaintiff chose to shave or trim his beard following the alleged threats by defendant, plaintiff did so even though he knew that he had been afforded a fourteen day "temporary hold" on any disciplinary enforcement while his application for a beard permit was pending. At most, defendant's actions imposed a *de minimis* burden on plaintiff's First Amendment rights. Thus, this court recommends that plaintiff's First Amendment claim be dismissed.[7]

---

[7]      Defendant also argues that he is entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability

"insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Because the defendant has not violated plaintiff's constitutional rights in the first instance, the court need not reach the issue of whether a reasonable person would have known of the constitutional violation.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 19) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 1295178

---

2016 WL 3882530
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Elijah Skates, Plaintiff,
v.
Jarrod Shusda, et al., Defendants.

Civil Action No. 9:14-CV-1092 (TJM/DEP)
|
Signed 05/31/2016

**Attorneys and Law Firms**

FOR PLAINTIFF: ELIJAH SKATES, Pro se, 97-35
104th Street, Apt. 1, Queens, NY 11416.

FOR DEFENDANTS: HON. ERIC T.
SCHNEIDERMAN, New York State Attorney
General, The Capitol, OF COUNSEL: ORIANA L.
CARRAVETTA, ESQ., Assistant Attorney General,
Albany, NY 12224.

<u>REPORT AND RECOMMENDATION</u>

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE
JUDGE

This is a civil rights action brought by *pro se* plaintiff
Elijah Skates, a former New York State prison inmate,
pursuant to 42 U.S.C. § 1983, against five employees
of the New York State Department of Corrections and
Community Supervision ("DOCCS"), one of whom has
been dismissed from the action. In his complaint, as
amended and narrowed as a result of earlier court
orders, plaintiff alleges that (1) he was denied his First
Amendment right to freely exercise his chosen religion
because he was not provided a proper religious meal on
one occasion; (2) his right to equal protection under the
Fourteenth Amendment was denied because he was not
treated similarly to those inmates who are members of
other religions; and (3) one of the named defendants
issued an adverse disciplinary hearing determination in
retaliation for plaintiff filing a grievance regarding his
religious rights.

Currently pending before the court is a motion brought
by the defendants to dismiss plaintiff's remaining three
claims. For the reasons set forth below, I recommend that
the motion be granted, in part, but otherwise denied.

I. <u>BACKGROUND</u> [1]

[1]   In light of the procedural posture of this case,
the following recitation is drawn principally from
plaintiff's amended complaint, the contents of which
have been accepted as true for purposes of the
pending motion. *See Erickson v. Pardus*, 551 U.S. 89,
94 (2007) ("[W]hen ruling on a defendant's motion
to dismiss, a judge must accept as true all of the factual
allegations contained in the complaint.") (citing *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007));
*see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).
Portions of the background have also been derived
from the exhibits that were attached to plaintiff's
amended complaint, which may also properly be
considered in connection with a dismissal motion. *See
Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42,
47-48 (2d Cir. 1991) ("[T]he complaint is deemed to
include any written instrument attached to it as an
exhibit or any statements or documents incorporated
in it by reference."); *accord, Samuels v. Air Transp.
Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

Prior to his release on or about September 11, 2015, [2]
plaintiff was a New York State inmate held in the
custody of the DOCCS. *See generally* Dkt. No. 33. At
the times relevant to his claims in this action, plaintiff
was confined in the Great Meadow Correctional Facility
("Great Meadow"), located in Comstock, New York. *Id.*
Plaintiff is a member of the Nation of Islam ("NOI") Faith
Group and observes Islamic religious beliefs and practices.
*Id.* at 3.

[2]   *See* New York State Department of
Corrections and Community Supervision, http://
nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ1/
WINQ000 (last visited May 27, 2016); *see also* Dkt.
No. 30.

In accordance with his religious beliefs, plaintiff planned
to observe the NOI Holy Day of Atonement on October
15 and 16, 2013. Dkt. No. 33 at 3. In connection with that
religious observance, plaintiff alleges he was supposed to
have received a Sahoor bag meal on October 15, 2013,
for consumption prior to dawn the following morning in
order to begin the fasting process associated with the holy
day. *Id.*; *see also* Dkt. No. 33-1 at 1. Despite notifying

corrections staff of his request for a Sahoor bag meal prior to the evening of October 15, 2013, plaintiff did not receive his meal. Dkt. No. 33 at 3-4.

**\*2** Unrelated to this isolated incident, plaintiff alleges that, in general, corrections personnel at Great Meadow have failed to properly recognize and support the NOI religion. Specifically, in his amended complaint plaintiff alleges that the "NOI Faith Group is the only religion in D.O.C.C.S. [that] does not have a [ministerial program coordinator ('MPC') ] in [the] Central Office." Dkt. No. 33 at 6. Plaintiff also appears to allege that there is no NOI chaplain at Great Meadow. *Id.* at 7. Notwithstanding this allegation, plaintiff confusingly alleges that Great Meadow, in fact, has a facility chaplain, identified as Imam Aboulkadir Elmi, but that Elmi's "religious outlooks and subjective and objective are in complete contradiction with the (N.O.I.) beliefs." [3] *Id.*

[3]     Imam Elmi was originally named as a defendant in the action. Dkt. No. 1 at 2. In his amended complaint, however, plaintiff has not asserted any claims against this individual. Dkt. No. 33 at 1, 2.

Plaintiff further alleges that defendant Jarrod Shusda conducted a Tier III disciplinary involving plaintiff on August 11, 2014, and that he found plaintiff guilty during the proceeding in retaliation for plaintiff's earlier grievance concerning the Sahoor bag meal. [4] Dkt. No. 33 at 6.

[4]     The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d at 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on or about September 4, 2014. Dkt. No. 1. Following a series of initial procedural developments, plaintiff sought and was granted leave to file an amended complaint in a decision and order issued by Senior District Judge Thomas J. McAvoy on October

22, 2015. [5] Dkt. No. 32. Named as defendants in plaintiff's amended are (1) Jarrod Shusda, who appears to be a food-service worker at Great Meadow; (2) Brent Yukoweic, a clergy member employed by the DOCCS; (3) Cheryl Morris, the DOCCS Director of Ministerial Services; and (4) Robert Schattinger, the DOCCS Director of Nutritional Services. *Id.* at 2. In his decision, Judge McAvoy accepted the amended complaint for filing only with respect to plaintiff's (1) First Amendment free exercise claim for damages against all defendants, in their individual capacities, arising from the alleged failure to provide him with a religious meal in October 2013; (2) an Equal Protection claim for damages, also against all defendants in their individual capacities; and (3) a retaliation claim for damages against defendant Shusda in his individual capacity. Dkt. No. 32 at 10.

[5]     Judge McAvoy noted that, in accepting certain claims asserted in the amended complaint, he "expresse[d] no opinion as to whether [the surviving] claims can withstand a properly filed motion to dismiss or for summary judgment." Dkt. No. 32 at 10.

In lieu of answering plaintiff's amended complaint, on November 19, 2015, defendants filed the pending motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 34. Defendants' motion, to which plaintiff has not responded, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Standard of Review

**\*3** A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that

rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

**B.** Free Exercise Claim

Plaintiff asserts a First Amendment claim against defendants based on allegations that he did not receive

a Sahoor bag meal on October 15, 2013. Dkt. No. 33 at 3-4. Defendants contend that this isolated incident is not sufficient to support a cognizable cause of action. Dkt. No. 34-1 at 6-8.

While inmates confined within prison facilities are by no means entitled to the full gamut of rights guaranteed under the United States Constitution, including its First Amendment, the free exercise clause of that provision does afford them at least some measure of constitutional protection, including their right to participate in religious meals. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("In the First Amendment context ... a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."); *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) ("We ... have clearly established that a prisoner has a right to a diet consistent with his or her religious scruples."). That right, however, is not without limits, and the task of defining the contours of that right in a prison setting requires striking a balance between the rights of prison inmates and the legitimate interests of prison officials tasked with maintaining prison security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987); *Ford*, 352 F.3d at 588; *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). When determining whether a defendant's failure to provide a plaintiff with his religious meals impinges upon his First Amendment free exercise right, the inquiry is "one of reasonableness, taking into account whether the particular [act] affecting [the] right ... is 'reasonably related to legitimate penological interests.' " *Benjamin*, 905 F.2d at 574 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Ford*, 352 F.3d at 588; *see also Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988).

**\*4** As a threshold matter, "[t]he prisoner must show ... that the disputed conduct substantially burdens his sincerely held religious beliefs." [6] *Salahuddin v. Goord*, 467 263, 274-75 (2d Cir. 2006). In evaluating this factor, the court must be wary of " 'question[ing] the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.' " *McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004) (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989)). Instead, a court should consider only whether the particular plaintiff has "demonstrate[d] that the beliefs professed are sincerely held and in the

individual's own scheme of things, religious." *Ford*, 352 F.3d at 588 (quotation marks omitted).

[6]    The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, ___ Fed.Appx. ____, No. 15-0692, 2016 WL 2610028, at *1 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

In their motion, defendants do not question the genuineness of plaintiff's religious beliefs. Dkt. No. 34-1 at 6-9. They do, however, contend that plaintiff's amended complaint does not allege sufficient facts to plausibly suggest that his rights were substantially burdened by defendants' actions. *Id.*

Plaintiff's free-exercise claim turns upon a single instance of the denial of a religious meal. Plaintiff alleges that, as a result of the failure to provide him with a Sahoor bag, he "was unable to properly worship and was forced to not be able to receive the full blessings and enjoy the full effect of the [Holy Day of Atonement]," and, instead, "was forced to dwell in sin" causing him "to inflict self-harm upon himself." [7] Dkt. No. 33 at 7. Various courts in this circuit addressing similar claims have concluded that such isolated incidents that are not representative of larger, systemic deprivations are constitutionally *de minimis* and do not rise to a level sufficient to support a First Amendment claim. *See, e.g., Washington v. Afify*, 968 F. Supp. 2d 532, 538-39 (W.D.N.Y. 2013) (finding the plaintiff's allegations that he was denied two religious breakfast meals and one evening meal were not sufficient to state a plausible First Amendment free exercise claim, noting that the plaintiff

had "alleged no facts to suggest that this brief deprivation was significant enough to more than minimally burden his religious practice"); *Perrilla v. Fischer*, No. 13-CV-0398, 2013 WL 5798557, at *5 (W.D.N.Y. Oct. 28, 2013) [8] (finding the plaintiff's allegations that he was denied double portions of meals and oatmeal in his Sahoor bag and that some religious meals were ill-prepared amounted to no more than a *de minimis* burden of the plaintiff's constitutional rights). In light of the Second Circuit's recent decision in *Williams*, however, in which the court criticized this court's determination that the plaintiff's allegation that he was denied, at most, five religious meals over the course of one month was a *de minimis* burden on plaintiff's rights, it appears that the Second Circuit may now equate a district court's finding of a *de minimis* burden with a finding that a plaintiff's beliefs are insincere. *See Williams*, 2016 WL 2610028, at *1 ("The district court relied on non-binding case law when it determined that [the plaintiff]'s burden was *de minimis* because only a few of his meals were delivered prematurely; its reasoning is inconsistent with this Court's case law, which cautions against the danger that courts will draw conclusory judgments about the unimportance of the religious practice to the adherent[.]" (quotation marks omitted)). With this in mind, I find that plaintiff's allegation that the denial of a single religious meal, which allegedly did not allow plaintiff to "enjoy the full effect" of the holy day and caused him to "dwell in sin," Dkt. No. 33 at 7, plausibly alleges that his First Amendment rights were substantially burdened.

[7]    In his SAC, plaintiff alleges that he cut himself and attempted to overdose on medication as a result of defendants' actions. Dkt. No. 33 at 7-8.

[8]    All unreported cases cited to in this report have been appended for the convenience of the *pro se* plaintiff.

  **\*5** Defendants contend that, even assuming plaintiff's rights were substantially burdened, dismissal of plaintiff's First Amendment claim is warranted because the exhibits attached to plaintiff's amended complaint reflect that the denial of a single religious meal to plaintiff on October 15, 2013, was the result of a mistake, and negligence is not actionable under the First Amendment. Dkt. No. 34-1 at 8-9. Notwithstanding whether defendants are correct with respect to their legal conclusion, [9] their factual conclusion mischaracterizes the evidence. In particular, a careful review of the e-mails attached to the amended complaint reveal that at least some of the named defendants were

aware in advance that the NOI holy day was approaching and that some prisoners would require Sahoor bag meals. Dkt. No. 33-1 at 8-12. According to the e-mails, and assuming the facts in plaintiff's amended complaint are true, notwithstanding this knowledge, no one took further steps to ensure that plaintiff, or any other NOI prisoner, received a religious meal on October 15, 2013. *Id.* Because it is not clear that plaintiff was denied his religious meal on October 15, 2013, as a result of a mistake or negligence, I cannot recommend dismissal of the First Amendment claim on this basis. Accordingly, I recommend that defendants' motion to dismiss plaintiff's free exercise claim be denied.

9     It does not appear that the Second Circuit has rendered an opinion regarding whether negligence is sufficient to sustain a First Amendment claim. *See Hamilton v. Countant*, No. 13-CV-0669, 2016 WL 881126, at *4 (S.D.N.Y. Mar. 1, 2016) ("Although the Second Circuit does not appear to have addressed whether negligence can sustain a First Amendment claim outside the context of retaliatory litigation, the Third, Fourth, Fifth, and Tenth Circuits have found negligence insufficient." (citations omitted)).

### C. Equal Protection Claim
In his complaint, plaintiff intimates that the DOCCS treats the NOI faith group differently than other religious groups in violation of plaintiff's equal protection rights under the Fourteenth Amendment. Dkt. No. 33 at 7. In their motion, defendants also request dismissal of this claim as lacking in facial merit. Dkt. No. 34-1 at 10-11.

The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state a cognizable equal protection cause of action, a plaintiff must allege sufficient facts that plausibly suggest that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). The plaintiff must also show "that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to any legitimate penological interests.' " *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (alteration omitted) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Plaintiff's amended complaint is internally inconsistent with regard to his allegation that the NOI inmates at Great Meadow do not have a facility chaplain. Dkt. No. 33 at 7. Specifically, while plaintiff contends, at paragraph forty-two, that "the (N.O.I.) Faith Group has no facility Chaplain (N.O.I. Minister), like the other faith groups," in the next paragraph plaintiff states that Great Meadow does, in fact, have a NOI chaplain but that the chaplain's "religious outlooks and subjective and objective are in complete contradiction with the (N.O.I.) beliefs." *Id.* Separately, plaintiff also alleges that there is no NOI MPC within the DOCCS. *Id.* at 6.

Conspicuously absent from plaintiff's amended complaint are any allegations linking the allegations described above and the named defendants. It is well established that the personal involvement of a defendant "in alleged constitutional deprivation is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *see also Iqbal*, 556 U.S. at 683 ("Petitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In this case, because the amended complaint contains no allegations connecting any of the named defendants with the alleged disparity in treatment between the NOI and other religious groups, I recommend that plaintiff's equal protection cause of action be dismissed.

### D. Retaliation Claim
**\*6** Plaintiff also asserts a retaliation claim against defendant Shusda based on allegations that Shusda found him guilty during a disciplinary hearing on August 11, 2014, in retaliation for a grievance plaintiff filed concerning his failure to receive his religious meal in October 2013. Dkt. No. 33 at 5-6. Defendants contend that plaintiff's amended complaint fails to allege sufficient facts plausibly suggesting that the hearing determination was motivated by retaliatory animus. Dkt. No. 34-1 at 11-14.

When prison officials take adverse action against an inmate, motivated by the inmate's exercise of constitutional rights, including the free speech provisions of the First Amendment, a cognizable claim of liability under section 1983 lies. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against

an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and prone to abuse, and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations showing that (1) he engaged in protected activity; (2) the defendants took adverse action against him; and (3) there was a causal connection between the protected activity and the adverse action. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

In this instance I assume, for the purposes of this report, that plaintiff's amended complaint plausibly alleges that plaintiff engaged in protected activity by filing a grievance and that defendant Shusda's guilty determination is sufficient to constitute adverse action. What is lacking, however, are any allegations of fact that link the two. To satisfy the nexus requirement for a retaliation claim, plaintiff must show that the protected conduct, in this case plaintiff's filing of a grievance, was a "substantial or motivating factor" in defendant's Shusda's disciplinary hearing determination. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003); *accord, Johnson v. Burge*, 506 Fed.Appx. 10, 12 (2d Cir. 2012). The amended complaint, however, neither alleges when plaintiff filed the grievance nor that defendant Shusda was aware of the grievance plaintiff allegedly filed. Assuming plaintiff filed his grievance in or around the time he was denied his religious meal in October 2013, approximately ten months elapsed between the filing of the grievance and the alleged adverse activity by defendant Shudsa in August 2014. While close temporal proximity may, on its own, be enough to prevent dismissal on the pleadings, *Davis v. Goord*, 320 F.3d 346, 352-54 (2d Cir. 2003), ten months is too attenuated to support plaintiff's retaliation claim. *See, e.g., Nicastro v. N.Y. City Dep't of Design & Constr.*, 125 Fed.Appx. 357, 358 (2d Cir. 2005) (concluding that

the plaintiff could not, at the summary judgment stage, establish even a *prima facie* case of retaliation where the adverse employment action occurred "almost ten months after" the plaintiff engaged in protected conduct and there was no other evidence of causation); *Figueroa v. Johnson*, 109 F. Supp. 3d 532, 552 (E.D.N.Y. 2015). Accordingly, I recommend that plaintiff's retaliation claim against defendant Shusda be dismissed.

### E. Whether to Permit Amendment

**\*7** Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc.*, 949 F.2d at 48 ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, No. 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, it is feasible that plaintiff could amend his currently operative pleading to include additional factual allegations that would plausibly suggest both the requisite personal involvement of the named defendants in connection with his equal protection claim and the missing nexus necessary to plead a cognizable retaliation claim. Accordingly, I recommend that plaintiff be granted leave to file a second amended complaint to cure these deficiencies.

If plaintiff chooses to avail himself of this opportunity, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations

Skates v. Shusda, Not Reported in F.Supp.3d (2016)
Case 9:17-cv-00600-TJM-TWD    Document 29    Filed 02/11/19    Page 77 of 77
2016 WL 3882530

of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any second amended complaint, plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, plaintiff is informed that any such second amended complaint will replace the existing amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (quotation marks omitted)).

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's amended complaint focuses on defendants' alleged failure to provide him with a religious Sahoor bag meal on October 15, 2013. When all inferences are drawn in favor of plaintiff, his amended complaint alleges sufficient facts plausibly suggesting that this deprivation substantially burdened his sincerely held religious beliefs. Accordingly, defendants' motion to dismiss should be denied with respect to plaintiff's First Amendment claim. Plaintiff's equal protection cause of action, however, is subject to dismissal in light of the fact that the amended complaint does not allege facts plausibly suggesting that any of the named defendants were personally involved in the alleged deprivations. Similarly, plaintiff's retaliation cause of action is subject to dismissal based upon his failure to allege facts plausibly suggesting the existence of a causal connection between his filing of a grievance in or about October 2013 and a disciplinary hearing determination rendered in August 2014. Accordingly, it is hereby respectfully

**\*8** RECOMMENDED that defendants' motion to dismiss (Dkt. No. 34) plaintiff's amended complaint (Dkt. No. 33) be GRANTED, in part, and that his equal protection and retaliation claims be DISMISSED, with leave to file a second amended complaint within thirty days from the date of any order adopting this recommendation, but that the remaining portion of the motion, addressing plaintiff's First Amendment free exercise cause of action, be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

### All Citations

Not Reported in F.Supp.3d, 2016 WL 3882530

© 2019 Thomson Reuters. No claim to original U.S. Government Works.